# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## *v.* WAFFLE HOUSE, INC.

No. 99–1823.   Argued October 10, 2001—Decided January 15, 2002

STEVENS, J., delivered the opinion of the Court, in which O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 298.

*Paul D. Clement* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson, Acting Solicitor General Underwood, Acting Assistant Attorney General Yeomans, James A. Feldman, Gwendolyn Young Reams, Philip B. Sklover, Lorraine C. Davis,* and *Robert J. Gregory.*

*David L. Gordon* argued the cause for respondent. With him on the brief were *D. Gregory Valenza, Stephen F. Fisher,* and *Thomas C. Goldstein.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Missouri et al. by *Jeremiah W. (Jay) Nixon,* Attorney General of Missouri, *James R. Layton,* State Solicitor, and *Alana M. Barragan-Scott,* Deputy Solicitor, and by the Attorneys General for their respective jurisdictions as follows: *Bruce M. Botelho* of Alaska, *Janet Napolitano* of Arizona, *Mark Pryor* of Arkansas, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *Robert A. Butterworth* of Florida, *Earl I. Anzai* of Hawaii, *James E. Ryan* of Illinois, *Steve Carter* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Mike Hatch* of Minnesota, *Mike McGrath* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *John J. Farmer, Jr.,* of New Jersey, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Betty D. Montgomery* of Ohio, *Sheldon Whitehouse* of Rhode Island, *Mark Barnett* of South Dakota, *Mark Shurtleff* of Utah, *William H. Sorrell* of Vermont, *Darrell V. McGraw, Jr.,* of West Virginia, and *Herbert D. Soll* of the Northern Mariana Islands; for the Maryland Commission on Human Relations et al. by *Lee D. Hoshall* and *Elizabeth Colette;* for AARP by *Thomas*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the Equal Employment Opportunity Commission (EEOC) from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action alleging that the employer has violated Title I of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 328, 42 U. S. C. § 12101 *et seq.* (1994 ed. and Supp. V).

I

In his application for employment with respondent, Eric Baker agreed that "any dispute or claim" concerning his employment would be "settled by binding arbitration."[1] As a

W. Osborne, Laurie A. McCann, and Melvin Radowitz; for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt, James B. Coppess,* and *Laurence Gold;* for the Lawyers' Committee for Civil Rights Under Law et al. by *Paul W. Mollica, John Payton, Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Karen K. Narasaki, Vincent A. Eng, Judith L. Lichtman, Martha F. Davis, Yolanda S. Wu, Marcia D. Greenberger,* and *Judith Appelbaum;* for the National Employment Lawyers Association et al. by *Michael Rubin, Scott A. Kronland, Cliff Palefsky, Steven R. Shapiro, Lenora M. Lapidus, F. Paul Bland, Jr., Arthur H. Bryant,* and *Paula A. Brantner;* and for the National Whistleblower Center by *Stephen M. Kohn, Michael D. John,* and *David K. Colapinto.*

Briefs of *amici curiae* urging affirmance were filed for Associated Industries of Massachusetts et al. by *Michael E. Malamut;* for the Council for Employment Law Equity by *Walter Dellinger, Samuel Estreicher,* and *Mark A. de Bernardo;* and for the Equal Employment Advisory Council by *Ann Elizabeth Reesman* and *Rae T. Vann.*

[1] The agreement states:

"The parties agree that any dispute or claim concerning Applicant's employment with Waffle House, Inc., or any subsidiary or Franchisee of Waffle House, Inc., or the terms, conditions or benefits of such employment, including whether such dispute or claim is arbitrable, will be settled by binding arbitration. The arbitration proceedings shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect at the time a demand for arbitration is made. A

condition of employment, all prospective Waffle House employees are required to sign an application containing a similar mandatory arbitration agreement. See App. 56. Baker began working as a grill operator at one of respondent's restaurants on August 10, 1994. Sixteen days later he suffered a seizure at work and soon thereafter was discharged. *Id.*, at 43–44. Baker did not initiate arbitration proceedings, nor has he in the seven years since his termination, but he did file a timely charge of discrimination with the EEOC alleging that his discharge violated the ADA.

After an investigation and an unsuccessful attempt to conciliate, the EEOC filed an enforcement action against respondent in the Federal District Court for the District of South Carolina,[2] pursuant to § 107(a) of the ADA, 42 U. S. C. § 12117(a) (1994 ed.), and § 102 of the Civil Rights Act of 1991, as added, 105 Stat. 1072, 42 U. S. C. § 1981a (1994 ed.). Baker is not a party to the case. The EEOC's complaint alleged that respondent engaged in employment practices that violated the ADA, including its discharge of Baker "because of his disability," and that its violation was intentional, and "done with malice or with reckless indifference to [his] federally protected rights." The complaint requested the court to grant injunctive relief to "eradicate the effects of [respondent's] past and present unlawful employment prac-

---

decision and award of the arbitrator made under the said rules shall be exclusive, final and binding on both parties, their heirs, executors, administrators, successors and assigns. The costs and expenses of the arbitration shall be borne evenly by the parties." App. 59.

[2] Because no evidence of the employment practices alleged in the complaint has yet been presented, we of course express no opinion on the merits of the EEOC's case. We note, on the one hand, that the state human rights commission also investigated Baker's claim and found no basis for suit. On the other hand, the EEOC chooses to file suit in response to only a small number of the many charges received each year, see n. 7, *infra.* In keeping with normal appellate practice in cases arising at the pleading stage, we assume, *arguendo*, that the EEOC's case is meritorious.

tices," to order specific relief designed to make Baker whole, including backpay, reinstatement, and compensatory damages, and to award punitive damages for malicious and reckless conduct. App. 38–40.

Respondent filed a petition under the Federal Arbitration Act (FAA), 9 U. S. C. § 1 *et seq.*, to stay the EEOC's suit and compel arbitration, or to dismiss the action. Based on a factual determination that Baker's actual employment contract had not included the arbitration provision, the District Court denied the motion. The Court of Appeals granted an interlocutory appeal and held that a valid, enforceable arbitration agreement between Baker and respondent did exist. 193 F. 3d 805, 808 (CA4 1999). The court then proceeded to consider "what effect, if any, the binding arbitration agreement between Baker and Waffle House has on the EEOC, which filed this action in its own name both in the public interest and on behalf of Baker." *Id.*, at 809. After reviewing the relevant statutes and the language of the contract, the court concluded that the agreement did not foreclose the enforcement action because the EEOC was not a party to the contract, and it has independent statutory authority to bring suit in any federal district court where venue is proper. *Id.*, at 809–812. Nevertheless, the court held that the EEOC was precluded from seeking victim-specific relief in court because the policy goals expressed in the FAA required giving some effect to Baker's arbitration agreement. The majority explained:

> "When the EEOC seeks 'make-whole' relief for a charging party, the federal policy favoring enforcement of private arbitration agreements outweighs the EEOC's right to proceed in federal court because in that circumstance, the EEOC's public interest is minimal, as the EEOC seeks primarily to vindicate private, rather than public, interests. On the other hand, when the EEOC is pursuing large-scale injunctive relief, the balance tips in favor of EEOC enforcement efforts in federal court

because the public interest dominates the EEOC's action." *Id.,* at 812.[3]

Therefore, according to the Court of Appeals, when an employee has signed a mandatory arbitration agreement, the EEOC's remedies in an enforcement action are limited to injunctive relief.

Several Courts of Appeals have considered this issue and reached conflicting conclusions. Compare *EEOC* v. *Frank's Nursery & Crafts, Inc.,* 177 F. 3d 448 (CA6 1999) (employee's agreement to arbitrate does not affect the EEOC's independent statutory authority to pursue an enforcement action for injunctive relief, backpay, and damages in federal court), with *EEOC* v. *Kidder, Peabody & Co.,* 156 F. 3d 298 (CA2 1998) (allowing the EEOC to pursue injunctive relief in federal court, but precluding monetary relief); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Nixon,* 210 F. 3d 814 (CA8), cert. denied, 531 U. S. 958 (2000) (same). We granted the EEOC's petition for certiorari to resolve this conflict, 532 U. S. 941 (2001), and now reverse.

## II

Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability. 42 U. S. C. § 12117(a) (1994 ed.).[4] Accordingly, the provisions of Title VII defining

---

[3] One member of the panel dissented because he agreed with the District Court that, as a matter of fact, the arbitration clause was not included in Baker's actual contract of employment. 193 F. 3d, at 813.

[4] Section 12117(a) provides:

"The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."

the EEOC's authority provide the starting point for our analysis.

When Title VII was enacted in 1964, it authorized private actions by individual employees and public actions by the Attorney General in cases involving a "pattern or practice" of discrimination. 42 U. S. C. § 2000e–6(a) (1994 ed.). The EEOC, however, merely had the authority to investigate and, if possible, to conciliate charges of discrimination. See *General Telephone Co. of Northwest* v. *EEOC*, 446 U. S. 318, 325 (1980). In 1972, Congress amended Title VII to authorize the EEOC to bring its own enforcement actions; indeed, we have observed that the 1972 amendments created a system in which the EEOC was intended "to bear the primary burden of litigation," *id.*, at 326. Those amendments authorize the courts to enjoin employers from engaging in unlawful employment practices, and to order appropriate affirmative action, which may include reinstatement, with or without backpay.[5] Moreover, the amendments specify the judicial districts in which such actions may be brought.[6] They do not mention arbitration proceedings.

---

[5] "(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

"(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U. S. C. § 2000e–5(g)(1) (1994 ed.).

[6] Section 2000e–5(f)(3) provides:

"Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction

In 1991, Congress again amended Title VII to allow the recovery of compensatory and punitive damages by a "complaining party." 42 U. S. C. § 1981a(a)(1) (1994 ed.). The term includes both private plaintiffs and the EEOC, § 1981a(d)(1)(A), and the amendments apply to ADA claims as well, §§ 1981a(a)(2), (d)(1)(B). As a complaining party, the EEOC may bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, backpay, and compensatory or punitive damages. Thus, these statutes unambiguously authorize the EEOC to obtain the relief that it seeks in its complaint if it can prove its case against respondent.

Prior to the 1991 amendments, we recognized the difference between the EEOC's enforcement role and an individual employee's private cause of action in *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355 (1977), and *General Telephone Co. of Northwest* v. *EEOC*, 446 U. S. 318 (1980). *Occidental* presented the question whether EEOC enforcement actions are subject to the same statutes of limitations that govern individuals' claims. After engaging in an unsuccessful conciliation process, the EEOC filed suit in Federal District Court, on behalf of a female employee, alleging sex discrimination. The court granted the defendant's motion for summary judgment on the ground that the EEOC's claim was time barred; the EEOC filed suit after California's 1-year statute of limitations had run. We reversed because "under the procedural structure created by the 1972

---

of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

amendments, the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties," 432 U. S., at 368. To hold otherwise would have undermined the agency's independent statutory responsibility to investigate and conciliate claims by subjecting the EEOC to inconsistent limitations periods.

In *General Telephone*, the EEOC sought to bring a discrimination claim on behalf of all female employees at General Telephone's facilities in four States, without being certified as the class representative under Federal Rule of Civil Procedure 23. 446 U. S., at 321–322. Relying on the plain language of Title VII and the legislative intent behind the 1972 amendments, we held that the EEOC was not required to comply with Rule 23 because it "need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." *Id.*, at 324. In light of the provisions granting the EEOC exclusive jurisdiction over the claim for 180 days after the employee files a charge, we concluded that "the EEOC is not merely a proxy for the victims of discrimination and that [its] enforcement suits should not be considered representative actions subject to Rule 23." *Id.*, at 326.

Against the backdrop of our decisions in *Occidental* and *General Telephone*, Congress expanded the remedies available in EEOC enforcement actions in 1991 to include compensatory and punitive damages. There is no language in the statutes or in either of these cases suggesting that the existence of an arbitration agreement between private parties materially changes the EEOC's statutory function or the remedies that are otherwise available.

## III

The FAA was enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. It has not been amended since the enactment of Title

VII in 1964. As we have explained, its "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 24 (1991). The FAA broadly provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as 'exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA. *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105 (2001).

The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. See 9 U. S. C. §§ 3 and 4. We have read these provisions to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U. S., at 25 (quoting *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983)). Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration. See *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"). For nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement. The FAA does not mention enforcement by public agencies; it ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of a judicial forum.

## IV

The Court of Appeals based its decision on its evaluation of the "competing policies" implemented by the ADA and the FAA, rather than on any language in the text of either the statutes or the arbitration agreement between Baker and respondent. 193 F. 3d, at 812. It recognized that the EEOC never agreed to arbitrate its statutory claim, *id.*, at 811 ("We must also recognize that in this case the EEOC is not a party to any arbitration agreement"), and that the EEOC has "independent statutory authority" to vindicate the public interest, but opined that permitting the EEOC to prosecute Baker's claim in court "would significantly trample" the strong federal policy favoring arbitration because Baker had agreed to submit his claim to arbitration. *Id.*, at 812. To effectuate this policy, the court distinguished between injunctive and victim-specific relief, and held that the EEOC is barred from obtaining the latter because any public interest served when the EEOC pursues "make whole" relief is outweighed by the policy goals favoring arbitration. Only when the EEOC seeks broad injunctive relief, in the Court of Appeals' view, does the public interest overcome the goals underpinning the FAA.[7]

---

[7] This framework assumes the federal policy favoring arbitration will be undermined unless the EEOC's remedies are limited. The court failed to consider, however, that some of the benefits of arbitration are already built into the EEOC's statutory duties. Unlike individual employees, the EEOC cannot pursue a claim in court without first engaging in a conciliation process. 42 U. S. C. §2000e–5(b) (1994 ed.). Thus, before the EEOC ever filed suit in this case, it attempted to reach a settlement with respondent.

The court also neglected to take into account that the EEOC files suit in a small fraction of the charges employees file. For example, in fiscal year 2000, the EEOC received 79,896 charges of employment discrimination. Although the EEOC found reasonable cause in 8,248 charges, it only filed 291 lawsuits. Equal Employment Opportunity Commission, Enforcement Statistics and Litigation (as visited Nov. 18, 2001), http://www.eeoc.gov/stats/enforcement.html. In contrast, 21,032 employment discrimination lawsuits were filed in 2000. See Administrative Office,

If it were true that the EEOC could prosecute its claim only with Baker's consent, or if its prayer for relief could be dictated by Baker, the court's analysis might be persuasive. But once a charge is filed, the exact opposite is true under the statute—the EEOC is in command of the process. The EEOC has exclusive jurisdiction over the claim for 180 days. During that time, the employee must obtain a right-to-sue letter from the agency before prosecuting the claim. If, however, the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit. 42 U. S. C. § 2000e–5(f)(1) (1994 ed.). In fact, the EEOC takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief. Brief for Petitioner 20. The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province—not that of the court—to determine

Judicial Business of the United States Courts 2000, Table C–2A (Sept. 30, 2000). These numbers suggest that the EEOC files fewer than two percent of all antidiscrimination claims in federal court. Indeed, even among the cases where it finds reasonable cause, the EEOC files suit in fewer than five percent of those cases. Surely permitting the EEOC access to victim-specific relief in cases where the employee has agreed to binding arbitration, but has not yet brought a claim in arbitration, will have a negligible effect on the federal policy favoring arbitration.

JUSTICE THOMAS notes that our interpretation of Title VII and the FAA "should not depend on how many cases the EEOC chooses to prosecute in any particular year." See *post*, at 314, n. 14 (dissenting opinion). And yet, the dissent predicts our holding will "reduce that arbitration agreement to all but a nullity," *post*, at 309, "discourag[e] the use of arbitration agreements," *post*, at 310, and "discourage employers from entering into settlement agreements," *post*, at 312. These claims are highly implausible given the EEOC's litigation practice over the past 20 years. When speculating about the impact this decision might have on the behavior of employees and employers, we think it is worth recognizing that the EEOC files suit in less than one percent of the charges filed each year.

whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.

Respondent and the dissent contend that Title VII supports the Court of Appeals' bar against victim-specific relief, because the statute limits the EEOC's recovery to "appropriate" relief as determined by a court. See Brief for Respondent 19, and n. 8; *post,* at 301–303 (THOMAS, J., dissenting). They rely on § 706(g)(1), which provides that, after a finding of liability, "the court may enjoin the respondent from engaging in such unlawful employment practice, and order *such affirmative action as may be appropriate,* which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . *or any other equitable relief as the court deems appropriate.*" 42 U. S. C. § 2000e–5(g)(1) (1994 ed.) (emphasis added). They claim this provision limits the remedies available and directs courts, not the EEOC, to determine what relief is appropriate.

The proposed reading is flawed for two reasons. First, under the plain language of the statute the term "appropriate" refers to only a subcategory of claims for equitable relief, not damages. The provision authorizing compensatory and punitive damages is in a separate section of the statute, § 1981a(a)(1), and is not limited by this language. The dissent responds by pointing to the phrase "may recover" in § 1981a(a)(1), and arguing that this too provides authority for prohibiting victim-specific relief. See *post,* at 303, n. 7. But this contention only highlights the second error in the proposed reading. If "appropriate" and "may recover" can be read to support respondent's position, then any discretionary language would constitute authorization for judge-made, *per se* rules. This is not the natural reading of the text. These terms obviously refer to the trial judge's discretion in a particular case to order reinstatement and award damages in an amount warranted by the facts of that

case. They do not permit a court to announce a categorical rule precluding an expressly authorized form of relief as inappropriate in all cases in which the employee has signed an arbitration agreement.[8]

The Court of Appeals wisely did not adopt respondent's reading of § 706(g). Instead, it simply sought to balance the policy goals of the FAA against the clear language of Title VII and the agreement. While this may be a more coherent approach, it is inconsistent with our recent arbitration cases. The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (1989).[9] See

---

[8] JUSTICE THOMAS implicitly recognizes this distinction by qualifying his description of the courts' role as determining appropriate relief "in any given case," or "in a particular case." See *post*, at 301, 303. But the Court of Appeals' holding was not so limited. 193 F. 3d 805, 812 (CA4 1999) (holding that the EEOC "may not pursue relief in court . . . specific to individuals who have waived their right to a judicial forum").

[9] In *Volt*, the parties to a construction contract agreed to arbitrate all disputes relating to the contract and specified that California law would apply. When one party sought to compel arbitration, the other invoked a California statute that authorizes a court to stay arbitration pending resolution of related litigation with third parties not bound by the agreement when inconsistent rulings are possible. We concluded that the FAA did not pre-empt the California statute because "the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement.'*" 489 U. S., at 474–475 (quoting 9 U. S. C. § 4). Similarly, the FAA enables respondent to compel Baker to arbitrate his claim, but it does not expand the range of claims subject to arbitration beyond what is provided for in the agreement.

Our decision in *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52 (1995), is not inconsistent with this position. In *Mastrobuono*, we reiterated that clear contractual language governs our interpretation of arbitration agreements, but because the choice-of-law provision in that case was ambiguous, we read the agreement to favor arbitration under the FAA rules. *Id.*, at 62. While we distinguished *Volt* on the ground

also *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395, 404, n. 12 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so"). Because the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 625 (1985), we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *Id.*, at 626. While ambiguities in the language of the agreement should be resolved in favor of arbitration, *Volt*, 489 U. S., at 476, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. "Arbitration under the [FAA] is a matter of consent, not coercion." *Id.*, at 479. Here there is no ambiguity. No one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims. It goes without saying that a contract cannot bind a nonparty. Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so.

Even if the policy goals underlying the FAA did necessitate some limit on the EEOC's statutory authority, the line drawn by the Court of Appeals between injunctive and victim-specific relief creates an uncomfortable fit with its avowed purpose of preserving the EEOC's public function while favoring arbitration. For that purpose, the category of victim-specific relief is both overinclusive and underinclusive. For example, it is overinclusive because while

---

that we were reviewing a federal court's construction of the contract, 514 U. S., at 60, n. 4, regardless of the standard of review, in this case the Court of Appeals recognized that the EEOC was not bound by the agreement. When that much is clear, *Volt* and *Mastrobuono* both direct courts to respect the terms of the agreement without regard to the federal policy favoring arbitration.

punitive damages benefit the individual employee, they also serve an obvious public function in deterring future violations.  See *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247, 266–270 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor . . . , and to deter him and others from similar extreme conduct"); Restatement (Second) of Torts § 908 (1977).  Punitive damages may often have a greater impact on the behavior of other employers than the threat of an injunction, yet the EEOC is precluded from seeking this form of relief under the Court of Appeals' compromise scheme.  And, it is underinclusive because injunctive relief, although seemingly not "victim-specific," can be seen as more closely tied to the employees' injury than to any public interest.  See *Occidental*, 432 U. S., at 383 (REHNQUIST, J., dissenting) ("While injunctive relief may appear more 'broad based,' it nonetheless is redress for individuals").

The compromise solution reached by the Court of Appeals turns what is effectively a forum selection clause into a waiver of a nonparty's statutory remedies.  But if the federal policy favoring arbitration trumps the plain language of Title VII and the contract, the EEOC should be barred from pursuing any claim outside the arbitral forum.  If not, then the statutory language is clear; the EEOC has the authority to pursue victim-specific relief regardless of the forum that the employer and employee have chosen to resolve their disputes.[10]  Rather than attempt to split the difference, we are

---

[10] We have held that federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the FAA because the agreement only determines the choice of forum.  "In these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'  [*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 628 (1985)]."  *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20, 26 (1991).  To the extent the Court of Appeals construed an employee's agreement to submit his claims to an arbitral forum as a waiver of the substantive statutory

persuaded that, pursuant to Title VII and the ADA, whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function.[11]

## V

It is true, as respondent and its *amici* have argued, that Baker's conduct may have the effect of limiting the relief that the EEOC may obtain in court. If, for example, he had failed to mitigate his damages, or had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly. See, *e. g., Ford Motor Co.* v. *EEOC,* 458 U. S. 219, 231–232 (1982) (Title VII claimant "forfeits his right to back-

---

prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit, the court obscured this crucial distinction and ran afoul of our precedent.

[11] If injunctive relief were the only remedy available, an employee who signed an arbitration agreement would have little incentive to file a charge with the EEOC. As a greater percentage of the work force becomes subject to arbitration agreements as a condition of employment, see Voluntary Arbitration in Worker Disputes Endorsed by 2 Groups, Wall Street Journal, June 20, 1997, p. B2 (reporting that the American Arbitration Association estimates "more than 3.5 million employees are covered" by arbitration agreements designating it to administer arbitration proceedings), the pool of charges from which the EEOC can choose cases that best vindicate the public interest would likely get smaller and become distorted. We have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims. Cf. *EEOC* v. *Shell Oil Co.,* 466 U. S. 54, 69 (1984) ("[I]t is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired"); *Occidental Life Ins. Co. of Cal.* v. *EEOC,* 432 U. S. 355, 368 (1977).

pay if he refuses a job substantially equivalent to the one he was denied"); *EEOC* v. *Goodyear Aerospace Corp.*, 813 F. 2d 1539, 1542 (CA9 1987) (employee's settlement "rendered her personal claims moot"); *EEOC* v. *U. S. Steel Corp.*, 921 F. 2d 489, 495 (CA3 1990) (individuals who litigated their own claims were precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims). As we have noted, it "goes without saying that the courts can and should preclude double recovery by an individual." *General Telephone*, 446 U. S., at 333.

But no question concerning the validity of his claim or the character of the relief that could be appropriately awarded in either a judicial or an arbitral forum is presented by this record. Baker has not sought arbitration of his claim, nor is there any indication that he has entered into settlement negotiations with respondent. It is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek. The only issue before this Court is whether the fact that Baker has signed a mandatory arbitration agreement limits the remedies available to the EEOC. The text of the relevant statutes provides a clear answer to that question. They do not authorize the courts to balance the competing policies of the ADA and the FAA or to second-guess the agency's judgment concerning which of the remedies authorized by law that it shall seek in any given case.

Moreover, it simply does not follow from the cases holding that the employee's conduct may affect the EEOC's recovery that the EEOC's claim is merely derivative. We have recognized several situations in which the EEOC does not stand in the employee's shoes. See *Occidental*, 432 U. S., at 368 (EEOC does not have to comply with state statutes of limitations); *General Telephone*, 446 U. S., at 326 (EEOC does not have to satisfy Rule 23 requirements); *Gilmer*, 500 U. S., at 32 (EEOC is not precluded from seeking classwide and equi-

table relief in court on behalf of an employee who signed an arbitration agreement). And, in this context, the statute specifically grants the EEOC exclusive authority over the choice of forum and the prayer for relief once a charge has been filed. The fact that ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims does not contradict these decisions, nor does it render the EEOC a proxy for the employee.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

The Court holds today that the Equal Employment Opportunity Commission (EEOC or Commission) may obtain victim-specific remedies in court on behalf of an employee who had agreed to arbitrate discrimination claims against his employer. This decision conflicts with both the Federal Arbitration Act (FAA), 9 U. S. C. § 1 *et seq.*, and the basic principle that the EEOC must take a victim of discrimination as it finds him. Absent explicit statutory authorization to the contrary, I cannot agree that the EEOC may do on behalf of an employee that which an employee has agreed not to do for himself. Accordingly, I would affirm the judgment of the Court of Appeals.

I

Before starting work as a grill operator for respondent Waffle House, Inc., Eric Scott Baker filled out and signed an employment application. This application included an arbitration clause providing that "any dispute or claim concerning Applicant's employment with Waffle House, Inc., or any subsidiary or Franchisee of Waffle House, Inc., or the terms,

conditions or benefits of such employment . . . will be settled by binding arbitration." App. 59.

The Court does not dispute that the arbitration agreement between Waffle House and Baker falls comfortably within the scope of the FAA, see *Circuit City Stores, Inc.* v. *Adams,* 532 U. S. 105 (2001), which provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U. S. C. §2. Neither does the Court contest that claims arising under federal employment discrimination laws, such as Baker's claim that Waffle House discharged him in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U. S. C. §12101 *et seq.* (1994 ed. and Supp. V), may be subject to compulsory arbitration. See *Gilmer* v. *Interstate/Johnson Lane Corp.,* 500 U. S. 20, 23 (1991) (holding that a claim arising under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. §621 *et seq.* (1994 ed.), may be subject to compulsory arbitration).[1] The Court therefore does not dispute that

---

[1] Admittedly, this case involves a claim under the ADA while *Gilmer* addressed compulsory arbitration in the context of the ADEA. Nevertheless, I see no reason why an employee should not be required to abide by an agreement to arbitrate an ADA claim. In assessing whether Congress has precluded the enforcement of an arbitration agreement with respect to a particular statutory claim, this Court has held that a party should be held to an arbitration agreement "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.,* 473 U. S. 614, 628 (1985). Here, the text of the ADA does not suggest that Congress intended for ADA claims to fall outside the purview of the FAA. Indeed, the ADA expressly encourages the use of arbitration and other forms of alternative dispute resolution, rather than litigation, to resolve claims under the statute: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this [Act]." 42 U. S. C. §12212 (1994 ed.).

Baker, by signing an arbitration agreement, waived his ability either to bring an ADA claim against Waffle House in court or, consequently, to obtain relief for himself in that forum.

The EEOC, in its complaint, sought to obtain the victim-specific relief for Baker that he could not seek for himself, asking a court to make Baker whole by providing reinstatement with backpay and compensatory damages and to pay Baker punitive damages.[2] App. 39–40. In its responses to interrogatories and directives to produce filed the same day as its complaint, the EEOC stated unambiguously: "All amounts recovered from Defendant Employer in this litigation will be received directly by Mr. Baker based on his charge of discrimination against Defendant Employer." *Id.*, at 52. The EEOC also admitted that it was "bring[ing] this action on behalf of Eric Scott Baker."[3] *Id.*, at 51.

By allowing the EEOC to obtain victim-specific remedies for Baker, the Court therefore concludes that the EEOC may do "on behalf of . . . Baker" that which he cannot do for himself. The Court's conclusion rests upon the following premise advanced by the EEOC: An arbitration agreement between an employer and an employee may not limit the remedies that the Commission may obtain in court because

[2] The EEOC, in its prayer for relief, also requested that the court enjoin Waffle House from engaging in any discriminatory employment practice and asked the court to order Waffle House to institute policies, practices, and programs which would provide equal employment opportunities for qualified individuals with disabilities, and which would eradicate the effect of its past and present unlawful employment practices. App. 39. The Court of Appeals concluded that Baker's arbitration agreement did not preclude the EEOC from seeking such broad-based relief, and Waffle House has not appealed that ruling. See 193 F. 3d 805, 813, n. 3 (CA4 1999).

[3] Although the EEOC's complaint alleged that Waffle House engaged in "unlawful employment *practices*," in violation of § 102(a) of the ADA, 42 U. S. C. § 12112(a) (1994 ed.), it mentioned no instances of discriminatory conduct on the part of Waffle House other than its discharge of Baker. App. 38 (emphasis added).

Title VII "grants the EEOC the right to obtain all statutory remedies in any action it brings."[4] Brief for Petitioner 17. The EEOC contends that "the statute in clear terms authorizes [it] to obtain all of the listed forms of relief," referring to those types of relief set forth in 42 U. S. C. § 2000e–5(g)(1) (1994 ed.) (including injunctive relief and reinstatement with backpay) as well as the forms of relief listed in § 1981a(a)(1) (compensatory and punitive damages). Brief for Petitioner 17–18. Endorsing the EEOC's position, the Court concludes that "these statutes unambiguously authorize the EEOC to obtain the relief that it seeks in its complaint if it can prove its case against respondent." *Ante*, at 287.

The Court's position, however, is inconsistent with the relevant statutory provision. For while the EEOC has the statutory right to *bring* suit, see § 2000e–5(f)(1), it has no statutory entitlement to *obtain* a particular remedy. Rather, the plain language of § 2000e–5(g)(1) makes clear that it is a *court's* role to decide whether to "enjoin the respondent . . . , and order such affirmative action *as may be appropriate*, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief *as the court deems appropriate*." (Emphasis added.) Whether a particular remedy is "appropriate" in any given case is a question for a court and not for the EEOC.[5] See *Albemarle Paper Co.*

---

[4] Title I of the ADA expressly incorporates "[t]he powers, remedies, and procedures set forth in [Title VII]." 42 U. S. C. § 12117(a). That includes the procedures applicable to enforcement actions as well as the equitable relief available under § 2000e–5(g).

[5] The EEOC also points out that Title VII gives the EEOC, and not an individual victim of discrimination, the choice of forum when the EEOC files an enforcement action. See § 2000e–5(f)(3). Since the statute gives the victim no say in the matter, the EEOC argues that an employee, by signing an arbitration agreement, should not be able to effectively negate *ex ante* the EEOC's statutory authority to choose the forum in which it brings suit. Brief for Petitioner 21–23. The Court, wisely, does not rely heavily on this argument since nothing in the Court of Appeals' decision

v. *Moody*, 422 U. S. 405, 415–416 (1975) ("The [Title VII] scheme implicitly recognizes that there may be cases calling for one remedy but not another, and . . . these choices are, of course, left in the first instance to the district courts"); *Selgas* v. *American Airlines, Inc.*, 104 F. 3d 9, 13, n. 2 (CA1 1997) ("It is clear that in a Title VII case, it is the court which has discretion to fashion relief comprised of the equitable remedies it sees as appropriate, and not the parties which may determine which equitable remedies are available").

Had Congress wished to give the EEOC the authority to determine whether a particular remedy is appropriate under § 2000e–5, it clearly knew how to draft language to that effect. See § 2000e–16(b) (providing that the EEOC shall have the authority to enforce § 2000e–16(a)'s prohibition of employment discrimination within federal agencies "through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section"). But Congress specifically declined to grant the EEOC such authority when it empowered the Commission to bring lawsuits against private employers. Both the original House version and the original Senate version of the Equal Employment Opportunity Act of 1972 would have granted the EEOC powers similar to those possessed by the National Labor Relations Board to adjudicate a complaint and implement a remedy. See H. R. 1746, 92d Cong., 1st Sess., § 706(h) (1971), and S. 2515, 92d Cong., 1st Sess., § 4(h) (1971), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972, pp. 7–8, 164–165. These bills were amended, however, once they reached the floor of both Houses of Congress to replace such "cease-and-desist" authority with the power only to prosecute an

---

prevents the EEOC from choosing to file suit in any appropriate judicial district set forth in § 2000e–5(f)(3). Rather, the Court of Appeals' holding only limits the *remedies* that the EEOC may obtain when it decides to institute a judicial action. See 193 F. 3d, at 806–807.

action in court.    See 117 Cong. Rec. 32088–32111 (1971); 118 Cong. Rec. 3965–3979 (1972).

The statutory scheme enacted by Congress thus entitles neither the EEOC nor an employee, upon filing a lawsuit, to obtain a particular remedy by establishing that an employer discriminated in violation of the law.[6]   In both cases, 42 U. S. C. § 2000e–5(g)(1) governs, and that provision unambiguously requires a *court* to determine what relief is "appropriate" in a particular case.[7]

## II

Because Congress has not given the EEOC the authority to usurp the traditional role of courts to determine what constitutes "appropriate" relief in a given case, it is necessary to examine whether it would be "appropriate" to allow the EEOC to obtain victim-specific relief for Baker here, notwithstanding the fact that Baker, by signing an arbitration

---

[6] The Court, in fact, implicitly admits as much.   Contradicting its earlier assertion that the "statutes unambiguously authorize the EEOC to obtain the relief *that it seeks* in its complaint if it can prove its case against respondent," *ante*, at 287 (emphasis added), the Court later concludes that the statutory scheme gives the trial judge "discretion in a particular case to order reinstatement and award damages in an amount warranted by the facts of that case."   *Ante*, at 292–293.

[7] Similarly, the EEOC's authority to obtain legal remedies is also no greater than that of an employee acting on his own behalf.   Title 42 U. S. C. § 1981a(a)(2), which was enacted as part of the Civil Rights Act of 1991, Pub. L. 102–166, 105 Stat. 1072, provides that the EEOC or an employee "*may recover* compensatory and punitive damages" in addition to the forms of relief authorized by § 2000e–5(g)(1).   (Emphasis added.) Nothing in § 1981a(a), however, alters the fundamental proposition that it is for the judiciary to determine what relief (of all the relief that plaintiffs "may recover" under the statute) the particular plaintiff before the court *is entitled to*.   The statutory language does not purport to grant the EEOC or an employee the absolute right to obtain damages in every case of proven discrimination, despite the operation of such legal doctrines as time bar, accord and satisfaction, or (as in this case) binding agreement to arbitrate.

agreement, has waived his ability to seek such relief on his own behalf in a judicial forum. For two reasons, I conclude it is not "appropriate" to allow the EEOC to do on behalf of Baker that which Baker is precluded from doing for himself.

### A

To begin with, when the EEOC litigates to obtain relief on behalf of a particular employee, the Commission must take that individual as it finds him. Whether the EEOC or an employee files a particular lawsuit, the employee is the ultimate beneficiary of victim-specific relief. The relevance of the employee's circumstances therefore does not change simply because the EEOC, rather than the employee himself, is litigating the case, and a court must consider these circumstances in fashioning an "appropriate" remedy.[8]

As a result, the EEOC's ability to obtain relief is often limited by the actions of an employee on whose behalf the Commission may wish to bring a lawsuit. If an employee signs an agreement to waive or settle discrimination claims against an employer, for example, the EEOC may not recover victim-specific relief on that employee's behalf. See, e. g., *EEOC* v. *Cosmair, Inc.*, 821 F. 2d 1085, 1091 (CA5 1987); *EEOC* v. *Goodyear Aerospace Corp.*, 813 F. 2d 1539, 1543 (CA9 1987); see also EEOC: Guidance on Waivers Under the ADA and Other Civil Rights Laws, EEOC Compliance Manual (BNA) N:2345, N:2347 (Apr. 10, 1997) (hereinafter EEOC Compliance Manual) (recognizing that a valid waiver or set-

---

[8] I agree with the Court that, in order to determine whether a particular remedy is "appropriate," it is necessary to examine the specific facts of the case at hand. See *ante*, at 292–293. For this reason, the statutory scheme does not permit us to announce a categorical rule barring lower courts from *ever* awarding a form of relief expressly authorized by the statute. When the same set of facts arises in different cases, however, such cases should be adjudicated in a consistent manner. Therefore, this Court surely may specify particular circumstances under which it would be inappropriate for trial courts to award certain types of relief, such as victim-specific remedies.

tlement agreement precludes the EEOC from recovering victim-specific relief for an employee). In addition, an employee who fails to mitigate his damages limits his ability to obtain relief, whether he files his own lawsuit or the EEOC files an action on his behalf. See *Ford Motor Co.* v. *EEOC*, 458 U. S. 219, 231–232 (1982). An employee's unilateral attempt to pursue his own discrimination claim may also limit the EEOC's ability to obtain victim-specific relief for that employee. If a court rejects the merits of a claim in a private lawsuit brought by an employee, for example, res judicata bars the EEOC from recovering victim-specific relief on behalf of that employee in a later action. See, *e. g., EEOC* v. *Harris Chernin, Inc.*, 10 F. 3d 1286, 1291 (CA7 1993).

In all of the aforementioned situations, the same general principle applies: To the extent that the EEOC is seeking victim-specific relief in court for a particular employee, it is able to obtain no more relief for that employee than the employee could recover for himself by bringing his own lawsuit. The EEOC, therefore, should not be able to obtain victim-specific relief for Baker in court through its own lawsuit here when Baker waived his right to seek relief for himself in a judicial forum by signing an arbitration agreement.

The Court concludes that the EEOC's claim is not "merely derivative" of an employee's claim and argues that "[w]e have recognized several situations in which the EEOC does not stand in the employee's shoes." *Ante,* at 297. The Court's opinion, however, attacks a straw man because this case does not turn on whether the EEOC's "claim" is wholly derivative of an employee's "claim." Like the Court of Appeals below, I do not question the EEOC's ability to seek declaratory and broad-based injunctive relief in a case where a particular employee, such as Baker, would not be able to pursue such relief in court. Rather, the dispute here turns on whether the EEOC's ability *to obtain victim-specific relief* is dependent upon the victim's ability to obtain such relief for himself.

The Court claims that three cases support its argument that the EEOC's claim is not "merely derivative" of an employee's claim.  See *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S., at 24; *General Telephone Co. of Northwest* v. *EEOC*, 446 U. S. 318, 325 (1980); *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355, 368 (1977).  Once the actual nature of the dispute is properly understood, however, it is apparent that these cases do not support the Court's position, for none of them suggests that the EEOC should be allowed to recover *victim-specific relief* on behalf of an employee who has waived his ability to obtain such relief for himself in court by signing a valid arbitration agreement.

In *Gilmer*, for example, this Court addressed whether arbitration procedures are inadequate in discrimination cases because they do not allow for "broad equitable relief and class actions."  500 U. S., at 32.  Rejecting this argument, the Court noted that valid arbitration agreements "will not preclude the EEOC from bringing actions seeking class-wide and equitable relief."  *Ibid.*  Conspicuously absent from the Court's opinion, however, was any suggestion that the EEOC could obtain *victim-specific relief* on behalf of an employee who had signed a valid arbitration agreement.  Cf. *ibid.*

Similarly, in *General Telephone*, this Court held only that lawsuits filed by the EEOC should not be considered representative actions under Federal Rule of Civil Procedure 23. In reaching this conclusion, the Court noted that "the EEOC is not merely a proxy for the victims of discrimination."  446 U. S., at 326.  To be sure, I agree that to the extent the EEOC seeks broad-based declaratory and equitable relief in court, the Commission undoubtedly acts both as a representative of a specific employee and to "vindicate the public interest in preventing employment discrimination."  *Ibid.* But neither this dual function nor anything in *General Telephone* detracts from the proposition that when the EEOC seeks to secure *victim-specific relief* in court, it may obtain

no more relief for an individual than the individual could obtain for himself.

Even the EEOC recognizes the dual nature of its role.[9] See EEOC Compliance Manual N:2346 (citing *General Telephone, supra,* at 326). In its compliance manual, the EEOC states that "every charge filed with the EEOC carries two potential claims for relief: the charging party's claim for individual relief, and the EEOC's claim to 'vindicate the public interest in preventing employment discrimination.'" EEOC Compliance Manual N:2346. It is for this reason that "a private agreement can eliminate an individual's right to personal recovery, [but] it cannot interfere with EEOC's right to enforce . . . the ADA . . . by seeking relief that will benefit the public and any victims of an employer's unlawful practices who have not validly waived their claims." *Id.,* at N:2347.[10]

In the final case cited by the Court, *Occidental Life Ins. Co.* v. *EEOC,* this Court held that state statutes of limita-

---

[9] The EEOC has consistently recognized that the Commission represents individual employees when it files an action in court. In this case, for instance, the EEOC stated in its answers to interrogatories that it brought this action "on behalf of Eric Scott Baker." See Part I, *supra.* Moreover, the EEOC has maintained in numerous cases that its attorneys have an attorney-client relationship with charging parties and their communications with charging parties are therefore privileged. See, *e. g.,* *EEOC* v. *Johnson & Higgins Inc.,* 78 FEP Cases 1127 (SDNY 1998); *EEOC* v. *McDonnell Douglas Corp.,* 948 F. Supp. 54 (ED Mo. 1996).

[10] This Court has recognized that victim-specific remedies also serve the public goals of antidiscrimination statutes. See, *e. g., McKennon* v. *Nashville Banner Publishing Co.,* 513 U. S. 352, 357–358 (1995). Nevertheless, when the EEOC is seeking such remedies, it is only serving the public interest to the extent that an employee seeking the same relief for himself through litigation or arbitration would also be serving the public interest. It is when the EEOC is seeking broader relief that its unique role in vindicating the public interest comes to the fore. The Commission's motivation to secure such relief is likely to be greater than that of an individual employee, who may be primarily concerned with securing relief only for himself.

tions do not apply to lawsuits brought by the EEOC, because "[u]nlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties." 432 U. S., at 368. The Court also noted that the 1-year statute of limitations at issue in that case "could under some circumstances directly conflict with the timetable for administrative action expressly established in the 1972 Act." *Id.*, at 368–369. Precluding the EEOC from seeking victim-specific remedies in court on behalf of an employee who has signed an arbitration agreement, however, would in no way impede the Commission from discharging its administrative duties nor would it directly conflict with any provision of the statute. In fact, such a result is entirely consistent with the federal policy underlying the Court's decision in *Occidental:* that employment discrimination claims should be resolved quickly and out of court. See *id.*, at 368.

## B

Not only would it be "inappropriate" for a court to allow the EEOC to obtain victim-specific relief on behalf of Baker, to do so in this case would contravene the "liberal federal policy favoring arbitration agreements" embodied in the FAA. See *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983).

Under the terms of the FAA, Waffle House's arbitration agreement with Baker is valid and enforceable. See Part I, *supra.* The Court reasons, however, that the FAA is not implicated in this case because the EEOC was not a party to the arbitration agreement and "[i]t goes without saying that a contract cannot bind a nonparty." *Ante*, at 294. The Court's analysis entirely misses the point. The relevant question here is not whether the EEOC should be bound by Baker's agreement to arbitrate. Rather, it is whether a court should give effect to the arbitration agreement be-

tween Waffle House and Baker or whether it should instead allow the EEOC to reduce that arbitration agreement to all but a nullity. I believe that the FAA compels the former course.[11]

By allowing the EEOC to pursue victim-specific relief on behalf of Baker under these circumstances, the Court eviscerates Baker's arbitration agreement with Waffle House and liberates Baker from the consequences of his agreement. Waffle House gains nothing and, if anything, will be worse off in cases where the EEOC brings an enforcement action should it continue to utilize arbitration agreements in the future. This is because it will face the prospect of defending itself in two different forums against two different parties seeking precisely the same relief. It could face the EEOC in court and the employee in an arbitral forum.

The Court does not decide here whether an arbitral judgment would "affect the validity of the EEOC's claim or the character of relief the EEOC may seek" in court.[12] *Ante,* at 297. Given the reasoning in the Court's opinion, however, the proverbial handwriting is on the wall. If the EEOC indeed is "the master of its own case," *ante,* at 291, I do not see how an employee's independent decision to pursue arbitral proceedings could affect the validity of the "EEOC's claim"

---

[11] The Court also reasons that "the FAA enables respondent to compel Baker to arbitrate his claim, but it does not expand the range of claims subject to arbitration beyond what is provided for in the agreement." *Ante,* at 293, n. 9. The Court does not explain, however, how the EEOC's ADA claim on Baker's behalf differs in any meaningful respect from the ADA claim that Baker would have been compelled to submit to arbitration.

[12] In the vast majority of cases, an individual employee's arbitral proceeding will be resolved before a parallel court action brought by the EEOC. See Maltby, Private Justice: Employment Arbitration and Civil Rights, 30 Colum. Human Rights L. Rev. 29, 55 (1998) (reporting that in arbitration the average employment discrimination case is resolved in under nine months while the average employment discrimination case filed in federal district court is not resolved for almost two years).

in court. Should this Court in a later case determine that an unfavorable arbitral judgment against an employee precludes the EEOC from seeking similar relief for that employee in court, then the Court's jurisprudence will stand for the following proposition: The EEOC may seek relief for an employee who has signed an arbitration agreement unless that employee decides that he would rather abide by his agreement and arbitrate his claim. Reconciling such a result with the FAA, however, would seem to be an impossible task and would make a mockery of the rationale underlying the Court's holding here: that the EEOC is "the master of its own case." *Ante,* at 291.

Assuming that the Court means what it says, an arbitral judgment will *not* preclude the EEOC's claim for victim-specific relief from going forward, and courts will have to adjust damages awards to avoid double recovery. See *ante,* at 297. If an employee, for instance, is able to recover $20,000 through arbitration and a court later concludes in an action brought by the EEOC that the employee is actually entitled to $100,000 in damages, one assumes that a court would only award the EEOC an additional $80,000 to give to the employee. Suppose, however, that the situation is reversed: An arbitrator awards an employee $100,000, but a court later determines that the employee is only entitled to $20,000 in damages. Will the court be required to order the employee to return $80,000 to his employer? I seriously doubt it.

The Court's decision thus places those employers utilizing arbitration agreements at a serious disadvantage. Their employees will be allowed two bites at the apple—one in arbitration and one in litigation conducted by the EEOC—and will be able to benefit from the more favorable of the two rulings. This result, however, discourages the use of arbitration agreements and is thus completely inconsistent with the policies underlying the FAA.

C

While the Court explicitly decides today only "whether the fact that Baker has signed a mandatory arbitration agreement limits the remedies available to the EEOC," *ibid.*, its opinion sets this Court on a path that has no logical or principled stopping point. For example, if "[t]he statute clearly makes the EEOC the master of its own case," *ante*, at 291, and the filing of a charge puts the Commission "in command of the process," *ibid.*, then it is likely after this decision that an employee's decision to enter into a settlement agreement with his employer no longer will preclude the EEOC from obtaining relief for that employee in court.

While the Court suggests that ordinary principles of mootness "may apply to EEOC claims," *ante*, at 298, this observation, given the reasoning in the Court's opinion, seems largely beside the point. It should go without saying that mootness principles apply to EEOC claims. For instance, if the EEOC settles claims with an employer, the Commission obviously cannot continue to pursue those same claims in court. An employee's settlement agreement with an employer, however, does not "moot" an action brought by the EEOC nor does it preclude the EEOC from seeking broad-based relief. Rather, a settlement may only limit the EEOC's ability to obtain victim-specific relief for the employee signing the settlement agreement. See, *e. g., Goodyear Aerospace Corp.*, 813 F. 2d, at 1541–1544.

The real question addressed by the Court's decision today is whether an employee can enter into an agreement with an employer that limits the relief the EEOC may seek in court on that employee's behalf. And if, in the Court's view, an employee cannot compromise the EEOC's ability to obtain particular remedies by signing an arbitration agreement, then I do not see how an employee may be permitted to do the exact same thing by signing a settlement agreement. See *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 511 (1974)

(noting that one purpose of the FAA is to place arbitration agreements "'upon the same footing as other contracts'" (citation omitted)). The Court's reasoning, for example, forecloses the argument that it would be inappropriate under 42 U. S. C. § 2000e–5(g)(1) for a court to award victim-specific relief in any case where an employee had already settled his claim. If the statutory provision, according to the Court, does not "permit a court to announce a categorical rule precluding an expressly authorized form of relief as inappropriate in all cases in which the employee has signed an arbitration agreement," then it surely does not "constitute authorization for [a] judge-made, *per se* rul[e]" barring the EEOC from obtaining victim-specific remedies on behalf of an employee who has signed a valid settlement agreement. *Ante*, at 292, 293.

Unfortunately, it is therefore likely that under the logic of the Court's opinion the EEOC *now will be able* to seek victim-specific relief in court on behalf of employees who have already settled their claims. Such a result, however, would contradict this Court's suggestion in *Gilmer* that employment discrimination disputes "can be settled . . . without any EEOC involvement." 500 U. S., at 28. More importantly, it would discourage employers from entering into settlement agreements and thus frustrate Congress' desire to expedite relief for victims of discrimination, see *Ford Motor Co.* v. *EEOC*, 458 U. S., at 221; *Occidental Life*, 432 U. S., at 364–365, and to resolve employment discrimination disputes out of court. See 42 U. S. C. § 12212 (encouraging alternative means of dispute resolution, including settlement negotiations, to avoid litigation under the ADA).

### III

Rather than allowing the EEOC to undermine a valid and enforceable arbitration agreement between an employer and an employee in the manner sanctioned by the Court today, I would choose a different path. As this Court has stated,

courts are "not at liberty to pick and choose among congressional enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Pittsburgh & Lake Erie R. Co.* v. *Railway Labor Executives' Assn.*, 491 U. S. 490, 510 (1989). In this case, I think that the EEOC's statutory authority to enforce the ADA can be easily reconciled with the FAA.

Congress has not indicated that the ADA's enforcement scheme should be interpreted in a manner that undermines the FAA. Rather, in two separate places, Congress has specifically encouraged the use of arbitration to resolve disputes under the ADA. First, in the ADA itself, Congress stated: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and *arbitration, is encouraged to resolve disputes arising under this chapter.*" 42 U. S. C. § 12212 (emphasis added). Second, Congress used virtually identical language to encourage the use of arbitration to resolve disputes under the ADA in the Civil Rights Act of 1991. See Pub. L. 102–166, § 118, 105 Stat. 1081.[13]

The EEOC contends that these provisions do not apply to this dispute because the Commission has not signed an arbitration agreement with Waffle House and the provisions encourage arbitration "only when the parties have consented to arbitration." Reply Brief for Petitioner 17. Remarkably, the EEOC at the same time questions whether it even has the statutory authority to take this step. See Brief

---

[13] This provision states: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Among "the Acts or provisions of Federal law" amended by the Civil Rights Act of 1991 was the ADA. See Pub. L. 102–166, § 118, 105 Stat. 1081.

for Petitioner 22, n. 7. As a result, the EEOC's view seems to be that Congress has encouraged the use of arbitration to resolve disputes under the ADA only in situations where the EEOC does not wish to bring an enforcement action in court. This limiting principle, however, is nowhere to be found in § 12212. The use of arbitration to resolve all disputes under the ADA is clearly "authorized by law." See Part I, *supra*. Consequently, I see no indication that Congress intended to grant the EEOC authority to enforce the ADA in a manner that undermines valid and enforceable arbitration agreements.[14]

In the last 20 years, this Court has expanded the reach and scope of the FAA, holding, for instance, that the statute applies even to state-law claims in state court and pre-empts all contrary state statutes. See *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265 (1995); *Southland Corp.* v. *Keating*, 465 U. S. 1 (1984). I have not always agreed with this Court's jurisprudence in this area, see, *e. g., Allied-Bruce, supra*, at 285–297 (THOMAS, J., dissenting), but it seems to me that what's good for the goose is good for the gander. The Court should not impose the FAA upon States in the absence of any indication that Congress intended such a result, see *Southland, supra*, at 25–30 (O'CONNOR, J., dissenting), yet refuse to interpret a *federal* statute in a manner

---

[14] I do not see the relevance of the Court's suggestion that its decision will only "have a negligible effect on the federal policy favoring arbitration" because the EEOC brings relatively few lawsuits. *Ante*, at 291, n. 7. In my view, either the EEOC has been authorized by statute to undermine valid and enforceable arbitration agreements, such as the one at issue in this case, or one should read the Commission's enforcement authority and the FAA in a harmonious manner. This Court's jurisprudence and the proper interpretation of the relevant statutes should not depend on how many cases the EEOC chooses to prosecute in any particular year. I simply see no statutory basis for the Court's implication that the EEOC has the authority to undermine valid and enforceable arbitration agreements so long as the Commission only opts to interfere with a relatively limited number of agreements.

compatible with the FAA, especially when Congress has expressly encouraged that claims under that federal statute be resolved through arbitration.

Given the utter lack of statutory support for the Court's holding, I can only conclude that its decision today is rooted in some notion that employment discrimination claims should be treated differently from other claims in the context of arbitration. I had thought, however, that this Court had decisively repudiated that principle in *Gilmer*. See 500 U. S., at 27–28 (holding that arbitration agreements can be enforced without contravening the "important social policies" furthered by the ADEA).

For all of these reasons, I respectfully dissent.