ALICIA M. OTAZO-REYES, UNITED STATES MAGISTRATE JUDGE
THIS CAUSE came before the Court upon Defendant PF Homestead, LLC's ("Defendant") Second Renewed Motion to Compel Arbitration or, in the Alternative, Dismiss and Memorandum of Law (hereafter, "Motion to Compel" and "Motion to Dismiss") [D.E. 36]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 38]. The undersigned held a hearing on this matter on January 8, 2019 [D.E. 47]. For the reasons stated below, the Motion to Compel and the Motion to Dismiss are DENIED.
FACTUAL AND PROCEDURAL BACKGROUND
This class action is brought by Plaintiff Jonnathan Ramos ("Plaintiff"), individually and on behalf of all others similarly situated, against Defendant, alleging violation of the Telephone Consumer Protection Act ("TCPA"). See Compl. [D.E. 1 at 1].
On December 1, 2015, Plaintiff entered into an agreement ("Agreement") with Defendant for membership in Defendant's fitness facility. Id. at 6, Agreement [D.E. 36-2]. The Agreement contained the following provision (hereafter, "General Provision"):
I understand I am not obligated to sign this agreement and should not do so if there are any unfilled blanks. I understand my right of cancellation and the billing and refund policies. I understand my release of liability, assumption of risk and agreement to indemnify, defend and hold harmless and I have been given the opportunity to review and ask questions related to my use of the facilities, exercise equipment, tanning, massage beds/chairs and other equipment, as well as my participation in exercise programs or other services and/or programs offered to members. I agree to comply with Planet Fitness' membership policies and club rules that may be communicated to me from time to time, whether in writing, electronically, through club signage or verbally. Planet Fitness may, in its sole discretion, modify any policy or club rule at any time and from time to time without advance notice. Planet Fitness reserves the right, in its sole discretion, to refund the pro-rated cost of unused services and terminate my membership immediately for violation of any membership policy or club rule. By signing below, I acknowledge and agree to all of the terms contained on the front and back of this agreement.
See Agreement [D.E. 36-2]. Immediately following the General Provision there is a line for signature that is signed by Plaintiff. Id. After that, the following provision *1359 appears (hereafter, the "Text Consent Provision"):
From time to time, Planet Fitness may contact its customers via telephone with prerecorded messages and/or text messages to deliver information regarding special offers and events, changes in fitness center hours, etc. On September 1, 2009, the FTC implemented a rule banning phone calls that deliver prerecorded commercial messages unless a company obtains prior written approval from its customers. Unless you opt out of such calls by checking the box provided below, you hereby authorize Planet Fitness to contact you by phone with prerecorded messages and/or text messages regarding special offers and events and other information regarding Planet Fitness. You may terminate this authorization upon receipt of any such phone call by following the prompts in the prerecorded message.
• I choose not to receive prerecorded messages and text messages from Planet Fitness. Id. The box is not marked. Id.
The Agreement also contains the following provision related to arbitration (hereafter, the "Arbitration Provision"):
3. Membership
J. Dispute Resolution: In the unlikely event that Planet Fitness and/or PF Corporate is unable to resolve a complaint you may have to your satisfaction (or is unable to resolve a dispute with you after attempting to do so informally), we each agree to resolve such disputes through binding arbitration or small claims court rather than a court of general jurisdiction. For simplicity and fairness, arbitration will be conducted on an individual basis in accordance with the American Arbitration Association's rules for consumer arbitration. By signing this agreement, you acknowledge and agree that you, Planet Fitness, and PF Corporate are each waving the right to a trial by jury and the right to participate in a class action, either in court or in arbitration. This Dispute Resolution provision shall apply to this contract unless, within thirty (30) days of signing this contract, you notify Planet Fitness in writing that you reject this provision. Such notification must be made in writing delivered to the club address listed on the first page. Rejection of this provision shall have no effect on the remaining provisions of this contract.
Id.
Sometime in 2018, Plaintiff cancelled his membership with Defendant. See Compl. [D.E. 1 at 6]. Thereafter, on August 10, 2018, Plaintiff received the following text message to his personal cellular phone (hereafter, the "Text Message"):
Planet Fitness: JONNATHAN! We're making it easier than ever to come back to PF. For a limited time you can rejoin for $ 1 Down and get ONE MONTH FREE. Use promo code BACK2PF10 for our classic membership or BACK2PFBC for the PF Black Card! Text STOP to opt-out or HELP for help. Rejoin Now - https://sdvye.com/dSxy6y09A3.
Id. The text message includes a hyperlink to a website owned and/or operated by Defendant. Id.
On August 23, 2018, Plaintiff brought this class action against Defendant asserting a claim under the TCPA, alleging a violation of 47 U.S.C. § 227(b). See Compl. [D.E. 1]. Specifically, Plaintiff alleges that Defendant caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, conversion, inconvenience and disruption to his daily life. Id. at 9. Plaintiff estimates that there are "thousands of *1360 consumers" who are eligible to be members of the class action. Id.
On November 30, 2018, Defendant filed the instant Motion to Compel and Motion to Dismiss. See Motion to Compel and Motion to Dismiss [D.E. 36]. In its Motion to Compel, Defendant argues that the Arbitration Provision is binding and enforceable against Plaintiff, and that Plaintiff's claim falls within the scope of the Agreement and the Arbitration Provision, requiring that the instant case be dismissed and the claims be arbitrated. Id. at 7-8. Alternatively, in its Motion to Dismiss, Defendant argues that Plaintiff's claim fails because Plaintiff has not alleged any injury, he provided consent to receive the Text Message, and he failed to allege facts sufficient to show that the Text Message was made with an automatic telephone dialing system ("ATDS").Id. at 1. On December 11, 2018, Plaintiff filed his Response, arguing that there is no enforceable agreement to arbitrate, or alternatively, that his claims are outside the scope of the Arbitration Provision; and that his pleading sufficiently states a TCPA claim. See Response [D.E. 39]. On December 18, 2018, Defendant filed its Reply [D.E. 43].
MOTION TO COMPEL
Applicable Law
"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth. Inc., 473 U.S. 614, 626-27, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ; Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002) ). "The FAA embodies a liberal federal policy favoring arbitration agreements." Id. (citations omitted). Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To determine whether parties should be compelled to arbitrate a dispute, courts consider: (1) whether an enforceable written agreement to arbitrate exists; (2) whether the issues are arbitrable; and (3) whether the party seeking arbitration has waived the right to arbitrate. Etienne v. Hang Tough. Inc., No. 08-CV-61682, 2009 WL 1140040, at *1 (S.D. Fla. Apr. 28, 2009).
"Absent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 291, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Doe v. Princess Cruise Lines. Ltd., 657 F.3d 1204, 1213 (11th Cir. 2011) (holding that some claims arose out of the plaintiff's employment and were thus arbitrable, while other claims were not) (citations omitted). Section 3 of the FAA provides that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.
Discussion
The Arbitration Provision states that it "shall apply to this contract," referring to the Agreement. See Agreement [D.E. 36-2]. Defendant argues that Plaintiff's TCPA claim is subject to arbitration *1361 because Plaintiff expressly agreed in writing to the Arbitration Provision of the Agreement. See Motion to Compel [D.E. 36 at 6, 12-13]. However, although Plaintiff signed the Agreement, he did not sign the Text Consent Provision. See Agreement [D.E. 36-2]. The Eleventh Circuit has already rejected the argument that a similar text consent provision provides the basis for compelling arbitration of a post-contract TCPA claim. See Gamble v. New Eng. Auto Fin., Inc., 735 Fed. App'x 664, 667 (11th Cir. 2018). In Gamble, the plaintiff filed a TCPA claim against the defendant, an auto loan financing company, after receiving text messages from the defendant seeking new business. Id. at 664-5. The plaintiff had signed an auto loan agreement that contained an arbitration provision and a text consent provision. Id. at 665. The auto loan agreement and text consent provision each had separate signature lines, and the plaintiff signed only the auto loan agreement. Id. The district court denied the defendant's motion to compel arbitration, and the Eleventh Circuit affirmed, holding that the TCPA claim arose "from post-agreement conduct that allegedly violated a separate, distinct federal law," and that the text consent provision was "a separate stand-alone provision which [the plaintiff] never signed, and thus no agreement regarding text messages exist[ed] between the parties." Id. at 666. The Court added, "[i]n terms of TCPA claims, the existence of a contract is unnecessary and irrelevant, unless the specific contract contemplates future TCPA claims." Id. at 667.
Here, neither the Agreement nor the Arbitration Provision contemplates future TCPA claims; thus, as in Gamble, the Text Consent Provision constitutes a "separate stand-alone provision." Id. at 666. Therefore, Plaintiff's claim "arises not from the [Agreement] or any breach of it, but "from post-agreement conduct that allegedly violates a separate, distinct federal law." Id. Here, the "post-agreement conduct" was the sending of the Text Message, an action that occurred after the Agreement had been terminated by Plaintiff. Because the Text Consent Provision was not part of the Agreement, and the Text Message constituted post-agreement conduct, Plaintiff's TCPA claim is not arbitrable pursuant to the Arbitration Provision. See Etienne, 2009 WL 1140040, at *1.
MOTION TO DISMISS
Applicable Law
Article III of the United States Constitution "restricts the jurisdiction of the federal courts to litigants who have standing to sue." Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). "The irreducible constitutional minimum of standing comprises three elements: injury in fact, causation, and redressability." Id."A plaintiff has injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent." Id. at 1002. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " Spokeo, Inc. v. Robins, --- U.S. ----, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130 ). "A 'concrete' injury must be 'de facto '; that is, it must actually exist." Spokeo, 136 S.Ct. at 1548. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. at 1549. A plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right[;]" however, a plaintiff "need not allege any additional *1362 harm beyond the one Congress has identified." Id.
The TCPA provides:
(b) Restrictions on use of automated telephone equipment
(1) Prohibitions
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-...
(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.
47 U.S.C. § 227(b)(1)(A)(iii).
The TCPA defines an automatic telephone dialing system (hereafter, "ATDS") as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).
Discussion
Defendant argues that Plaintiff's claim fails because: (1) Plaintiff has not alleged any injury; (2) Plaintiff provided express, written consent to receive the text message at issue in the case; and (3) Plaintiff failed to allege facts sufficient to show that the text message at issue was made with an ATDS. See Motion to Compel [D.E. 36 at 6].
Regarding Defendant's first argument, Plaintiff must allege an injury-in-fact that is both particular and concrete. Spokeo, 136 S.Ct. at 1545. In terms of particularity, Plaintiff is not required to prove monetary damages under the TCPA. Palm Beach Golf Center-Boca, Inc. v. Sarris, 781 F.3d 1245, 1252 (11th Cir. 2015) ; 47 U.S.C.A. § 227(b)(3). He must instead show that the injury affected him in a "personal and individual way." Spokeo, 136 S.Ct. at 1548. Here, Plaintiff alleges that Defendant made an automated call to his personal phone number, causing him, among other things, invasion of privacy, aggravation and annoyance. See Compl. [D.E. 1]. Hence, particularity has been sufficiently pled. Hossfeld v. Compass Bank, No. 2:16-cv-2018-VEH, 2017 WL 5068752, at *7 (N.D. Ala. Nov. 3, 2017) (finding particularity established where the plaintiff alleged two autodialed phone calls caused him temporary deprivation of his phone, invasion of privacy, waste of time, and reduced phone battery life). Regarding concreteness, the undersigned agrees with the court in Hossfeld, which stated:
Ultimately, the Court rejects those cases that, utilizing a de minimis approach to evaluating concreteness, have found that a TCPA claim lacks that component when a plaintiff is complaining about only one or two unsolicited communications via a telephone call, voicemail message, text message, or facsimile. The Court, instead, adopts the Third Circuit's reasoning in Susinno v. Work Out World Inc., 862 F.3d 346 (3d Cir. 2017), and finds that [the plaintiff's] allegations of at least one unauthorized phone call show a sufficiently concrete injury.
...
Further, the stated purpose of the call-whether driven by telemarketing or survey-related-is ultimately of no consequence to the Article III harm caused by the intrusion associated with such an unsolicited automated call. The Court *1363 additionally agrees with Susinno's historical assessment that the intangible harm resulting from the alleged TCPA violation shares a "close relationship to[,]" Spokeo, 136 S.Ct. at 1549, and most closely mirrors an intrusion upon seclusion privacy claim."
Id. at *7, *10. Here, Plaintiff alleges invasion of privacy and annoyance, injuries that "are precisely the kinds of harm the TCPA aims to prevent." Tillman v. Ally Financial, 2016 WL 6996113, at *3 (M.D. Fla. Nov. 30, 2016) (citing numerous cases where courts have recognized Congress' intent in enacting the TCPA as "protecting consumers' privacy rights to be free from unwanted autodialed calls"). Thus, concreteness is satisfied and Plaintiff has sufficiently pled injury-in-fact. Id.; Spokeo, 136 S.Ct. at 1548-49 ; Hossfeld, 2017 WL 5068752, at *7, *10.
With regard to Defendant's consent argument, Plaintiff did not check the box next to the Text Consent Provision, nor did he sign, or physically mark in any way, acknowledgment of the Text Consent Provision. Thus, Plaintiff did not give "prior express consent" as required by 47 U.S.C. § 227(b)(1)(A). Additionally, there are "no rights or obligations between the parties" based on the unmarked Text Consent Provision. See Gamble, 735 Fed. App'x at 666 (a provision granting a company the right to send its customers text messages, "when unsigned, does not create any rights or obligations between the parties.") Therefore, the statutory "opt in" requirement for receiving text messages from Defendant was not met.
In its third argument, Defendant contends that there was sufficient human intervention to disqualify the device that sent the Text Message, the Gleantap, as an ATDS. However, the undersigned finds that, for purposes of the Motion to Dismiss, Plaintiff has sufficiently alleged that the Text Message was sent by autodialing, based on the presence of marketing promo codes and a website in the Text Message, and the "impersonal and generic nature" of the wording, all suggesting that the Text Message was sent to a mass audience by an autodial function. See Compl. [D.E. at 6]. Defendant may renew the argument of whether the equipment used in this case is an ATDS at the summary judgment stage, after the Parties have conducted discovery on this issue.
Based on the foregoing, it is
ORDERED AND ADJUDGED that Defendant's Motion to Compel and Motion to Dismiss are DENIED.
DONE AND ORDERED in Chambers at Miami, Florida this 25th day of January, 2019.