[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14832

_____

D.C. Docket No. 1:15-cv-03755-MHC

SEBASTIAN CORDOBA, et al.,

Plaintiffs-Appellees,

versus

DIRECTV, LLC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 19, 2020)

Before WILSON and GRANT, Circuit Judges, and MARTINEZ,* District Judge

PER CURIAM:

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida,
sitting by designation.

I.

In 2015, Plaintiff Sebastian Cordoba filed a putative class action against DIRECTV, alleging violations of the Telephone Consumer Protection Act ("TCPA"). During the course of that underlying litigation and in preparing its defense, DIRECTV allegedly shared its customers' personal information with its expert witness, Debra Aron. Specifically, DIRECTV is alleged to have created a data file containing, among others, certain customers' accounts numbers, first and last names, account creation dates, and home and business telephone numbers. Plaintiff Rene Romero alleges that such disclosure was nonconsensual, and therefore, in violation of the Satellite Television Extension and Localism Act of 2010 ("STELA").

On May 30, 2018, the district court granted Cordoba's motion for leave to file a Third Amended Complaint, which added Romero as an additional plaintiff and a class representative for the STELA claim. DIRECTV responded by moving to compel arbitration under the arbitration provision in Romero's 2016 Customer Agreement—or, in the alternative, under the 2014 or 2015 versions of the Customer Agreement.

The district court denied DIRECTV's motion. The district court found that while Romero accepted the arbitration clause in the 2016 Customer Agreement, the arbitration provision therein did not encompass Romero's STELA claims.

In pertinent part, the 2016 Customer Agreement contains the following arbitration provision:

> **9.2 Arbitration Agreement**
> (1) DIRECTV and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

The district court found that "the [Federal Arbitration Act] requires that the controversy 'aris[e] out of' the contract between the parties" and that "DIRECTV ha[d] not established that Romero's claim arises from the 2016 Agreement." Therefore, the court held, Romero's STELA claim is not covered by the Agreement's arbitration provision. This appeal followed.

## II.

We review the district court's denial of a motion to compel arbitration *de novo. MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 946 (11th Cir. 1999).

## III.

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Courts are to construe "any doubts concerning the scope of arbitrable issues…in favor of arbitration." *Id.* at 626. The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement, and to further the FAA's purpose

3

of "guarantee[ing] the enforcement of private contractual arrangements,"

arbitration agreements must be interpreted consistent with "the clear intent of the

parties…[and] the plain language of the contract…." *E.E.O.C. v. Waffle House,*

*Inc.*, 534 U.S. 279, 294 (2002).

Where an agreement "evince[s] a clear intent to cover more than just those

matters set forth in the contract," the Court has upheld and enforced broad clauses

requiring arbitration of "all disputes between the parties to the agreement." *Bd. of*

*Tr. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob.*

*Mkts., Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (internal quotation and citation

omitted). In short, a "party cannot avoid arbitration…because the arbitration clause

uses general, inclusive language, rather than listing every possible specific claim."

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000).

IV.

That said, our holding is narrow. Without addressing the more general

question of whether the relevant arbitration provision is in fact enforceable as to

"all claims and disputes" as DIRECTV contends, we find—based on the limited

facts of this matter—Romero's STELA claim indeed falls within its purview.

The arbitration provision expressly governs "claims arising out of or relating

to *any aspect of the relationship* between" the parties (emphasis added). Romero's

STELA claim is a direct derivative of his "relationship" with DIRECTV. Romero

4

alleges that DIRECTV violated Section 338(i)(4) of STELA, which prohibits a "satellite carrier" from the nonconsensual disclosure of "personally identifiable information concerning any subscriber." 47 U.S.C. § 338(i)(4)(A).[1] Romero is a paying subscriber of DIRECTV. That is the entirety of the relationship between the two. If not for Romero's subscriber relationship with DIRECTV, the factual allegations underlying his claim would be non-existent—DIRECTV would not have his information to share. This subscriber relationship both predicates Romero's STELA claim and delineates the "relationship" referenced and governed by the Customer Agreement's arbitration provision. Accordingly, Romero's STELA claim necessarily arises out of his relationship with DIRECTV as contemplated by the arbitration clause.

Simply put, without this subscriber relationship, Romero has no STELA claim. Therefore, because of this relationship, such STELA claim is subject to arbitration.

## IV.

Because Romero's STELA claim is governed by the Customer Agreement's arbitration provision, the district court erred in denying DIRECTV's motion to compel arbitration. **REVERSED** and **REMANDED**.

---

[1] The statute defines a "subscriber" as "a person or entity that receives a secondary transmission service from a satellite carrier and pays a fee for the service, directly or indirectly, to the satellite carrier or to a distributor." 47 U.S.C. § 338(k)(9).