PRESENT:  All the Justices

NC FINANCIAL SOLUTIONS
OF UTAH, LLC,

v.  Record No. 190840

OPINION BY
JUSTICE TERESA M. CHAFIN
FEBRUARY 25, 2021

COMMONWEALTH OF VIRGINIA
*EX REL.* MARK R. HERRING,
ATTORNEY GENERAL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Daniel E. Ortiz, Judge


The Attorney General, acting on behalf of the Commonwealth, filed the present action against NC Financial Solutions of Utah, LLC ("NCFS-Utah"), to enforce the provisions of the Virginia Consumer Protection Act (the "VCPA"), Code §§ 59.1-196–59.1-207.

On appeal, NCFS-Utah argues that the Circuit Court of Fairfax County erred when it refused to enforce arbitration agreements between NCFS-Utah and the individual consumers who were affected by the alleged VCPA violations.  Additionally, NCFS-Utah maintains that the VCPA does not permit the Commonwealth to pursue restitution for individual consumers.  For the following reasons, we affirm the circuit court's judgment.

## I.  BACKGROUND

NCFS-Utah is an online lender.  Between 2012 and 2018, NCFS-Utah provided loans to over 47,000 Virginia consumers, at interest rates that ranged from 34 to 155 percent.  On April 23, 2018, the Attorney General filed a complaint against NCFS-Utah on behalf of the Commonwealth.  The complaint alleged that NCFS-Utah's lending practices violated certain provisions of the VCPA.

The complaint requested injunctive relief, civil penalties, and awards of attorney's fees, costs, and reasonable expenses. The complaint also requested that the circuit court "[g]rant judgment against [NCFS-Utah] and award to the Commonwealth all sums necessary to restore to any consumers the money or property which may have been acquired from them by [NCFS-Utah] in connection with its violations . . . of the VCPA." Furthermore, the complaint requested that the circuit court "[e]nter any additional orders or decrees as may be necessary to restore to any consumers the money or property" that NCFS-Utah acquired through its unlawful conduct.

On July 17, 2018, NCFS-Utah filed a "Motion to Dismiss, or Alternatively, to Compel Arbitration of Individual Damages." Based on arbitration provisions in the loan agreements between NCFS-Utah and the individual Virginia consumers, NCFS-Utah argued that the consumers had agreed to arbitrate any disputes arising from the loans at issue.[1] NCFS-Utah maintained that an award of restitution would circumvent these arbitration agreements. Moreover, NCFS-Utah asserted that an award of restitution would be inconsistent with the provisions of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16. Thus, NCFS-Utah argued that an award of restitution was preempted by federal law. NCFS-Utah requested that the circuit court either dismiss the restitution component of the complaint or compel the Virginia consumers to arbitrate any individual claims for damages.

The Commonwealth filed a memorandum opposing NCFS-Utah's motion on August 10, 2018. Citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2005), the Commonwealth argued that

---

[1] The loan agreements between NCFS-Utah and the Virginia consumers contained broad arbitration provisions. The arbitration provisions stated that all claims "arising from or relating directly or indirectly" to the loan agreements were subject to arbitration, including any claims "based upon a violation of any state . . . statute or regulation" and any claims "asserted on [the consumer's] behalf by another person." The loan agreements also stated that the arbitration provisions were "governed by the [FAA]."

2

it was not bound by the arbitration provisions at issue. The Commonwealth noted that it was not a party to the loan agreements that contained the arbitration provisions. The Commonwealth also emphasized that it was attempting to enforce the VCPA on behalf of the public in general rather than the individual consumers.

The circuit court held a hearing regarding NCFS-Utah's motion on December 7, 2018. At the hearing, NCFS-Utah argued that *Waffle House* only applies to employment claims pursued by the Equal Employment Opportunity Commission (the "EEOC"). NCFS-Utah maintained that an award of restitution would nullify the arbitration agreements between NCFS-Utah and the Virginia consumers and conflict with the provisions of the FAA. NCFS-Utah also argued that the VCPA did not allow the Commonwealth to collect restitution for individual consumers.

In response, the Commonwealth argued that *Waffle House* was dispositive of the pending motion. The Commonwealth maintained that the FAA was not implicated in the present case because the Commonwealth was not bound by the arbitration agreements between NCFS-Utah and the Virginia consumers. The Commonwealth argued that its ability to enforce the VCPA was not limited by the arbitration agreements at issue, and that it had statutory authority to pursue restitution when enforcing the VCPA on behalf of the public.

The circuit court denied NCFS-Utah's motion on February 25, 2019. Relying on *Waffle House*, the circuit court concluded that the Commonwealth was not bound by the arbitration agreements between NCFS-Utah and the Virginia consumers. The circuit court determined that the Commonwealth had statutory authority to pursue litigation to enforce the VCPA. Additionally, the circuit court determined that Code §§ 59.1-203 and 59.1-205 authorize the

Commonwealth to seek restitution for individual consumers in VCPA enforcement actions. This appeal followed.[2]

## II. ANALYSIS

NCFS-Utah presents two primary arguments on appeal. First, NCFS-Utah contends that an award of restitution in this case would conflict with the provisions of the FAA and general principles of contract law. Second, NCFS-Utah argues that the VCPA does not authorize the Commonwealth to collect restitution for individual consumers. These arguments present issues of statutory interpretation and other issues of law that are subject to de novo review. *See Virginia Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 380 (2014); *Anthony v. Verizon Va., Inc.*, 288 Va. 20, 29 (2014).

### A.

NCFS-Utah argues that the FAA and general principles of contract law bar an award of restitution in this case. This argument fails for a fundamental reason. As noted by the circuit court, the Commonwealth was not a party to the loan agreements between NCFS-Utah and the Virginia consumers. Accordingly, the Commonwealth is not bound by the arbitration provisions contained in the loan agreements, and it could therefore pursue its claim for restitution in a judicial forum. Neither the FAA nor general principles of contract law preclude the Commonwealth from seeking restitution under the circumstances of the present case.

The FAA was enacted to "place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). In pertinent part, Section 2 of the FAA states:

---

[2] NCFS-Utah filed an interlocutory appeal pursuant to Section 16 of the FAA, 9 U.S.C. § 16, and Code § 8.01-581.016, a similar provision of the Virginia Uniform Arbitration Act (the "VUAA").

4

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In general, the provisions of the FAA reflect the "liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA ensures that arbitration agreements are consistently enforced, "notwithstanding any state substantive or procedural policies to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Nevertheless, the FAA is simply "at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

Like the federal policy, the public policy of Virginia also favors arbitration.[3] *See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 122 (2002). Pursuant to the FAA, this Court applies "federal substantive law to determine whether the parties must submit to binding arbitration as required by [a] contract." *Amchem Products, Inc. v. Newport News Cir. Ct. Asbestos Cases Plaintiffs*, 264 Va. 89, 96 (2002). The FAA, however, does not purport "to alter background principles of state contract law regarding the scope of agreements (including

_____

[3] The VUAA contains a provision that is nearly identical to Section 2 of the FAA. Code § 8.01-581.01 states that:

[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.

5

the question of who is bound by them).” *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Therefore, we rely on the general “law of contracts” in order to determine whether a “valid and enforceable agreement to arbitrate” exists between the parties in any given case. *Mission Residential, LLC v. Triple Net Properties, LLC*, 275 Va. 157, 160 (2008).

As a general principle, “[a] party cannot be compelled to submit to arbitration unless [it] has first agreed to arbitrate.” *Id.* at 161 (quoting *Doyle & Russell, Inc. v. Roanoke Hosp. Ass’n*, 213 Va. 489, 494 (1973)). “Arbitration under the [FAA] is a matter of consent, not coercion.” *Waffle House*, 534 U.S. at 294 (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (alteration in original). “The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it ‘does not require parties to arbitrate when they have not agreed to do so.’” *Id.* at 293 (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 478). While the FAA “ensures the enforceability of private agreements to arbitrate, [it] does not purport to place any restriction on a nonparty’s choice of a judicial forum.” *Id.* at 289.

In *Waffle House*, the Supreme Court of the United States determined that an arbitration agreement between an employer and an employee did not preclude the EEOC from pursuing an enforcement action against the employer to obtain “victim-specific” relief for the employee (i.e., backpay, reinstatement, and other damages). *See id.* at 282.

The Supreme Court noted that the EEOC was not a party to the arbitration agreement between the employer and the employee. *Id.* at 294. Additionally, the Supreme Court observed that the EEOC never agreed to arbitrate the employment dispute at issue. *Id.* Consequently, the

6

Supreme Court concluded that the EEOC was not bound by the arbitration agreement. *See id.* ("It goes without saying that a contract cannot bind a nonparty.").[4]

Moreover, the Supreme Court noted that the FAA does not address enforcement actions that are brought by public agencies. *See id.* at 289. The Supreme Court concluded that the EEOC was pursuing the enforcement action on behalf of the public, despite its request for individual-specific remedies. *See id.* at 296 ("[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief.").

Additionally, the Supreme Court noted that the EEOC's claim was not merely "derivative" of the employee's claim. *See id.* at 297. While the Supreme Court acknowledged that the employee's conduct may have limited the relief available to the EEOC, the Court explained that the EEOC was not proceeding as a "proxy for the employee." *See id.* at 297-98.

We recognize that *Waffle House* was decided within the context of a "detailed enforcement scheme created by Congress." *See id.* at 296. Specifically, *Waffle House* involved an alleged violation of the Americans with Disabilities Act of 1990 (the "ADA") that was challenged by the EEOC through the procedures set forth in Title VII of the Civil Rights Act of 1964 ("Title VII"). *See id.* at 285. The holding in *Waffle House*, however, was primarily based

---

[4] We note that this is a general statement. The Supreme Court has explained that traditional principles of contract law allow contracts to be enforced against third parties in certain circumstances, through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *See Arthur Andersen LLP*, 556 U.S. at 631 (quoting 21 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 57:19, at 183 (4th ed. 2001)). These theories of third-party liability do not apply in the present case.

on the scope of the FAA and the limitations of the underlying arbitration agreement rather than the specific provisions of the ADA or Title VII.

The principles underlying the *Waffle House* decision apply with equal weight in the present case. Like the EEOC in *Waffle House*, the Commonwealth was not a party to the underlying arbitration agreements. Furthermore, the Commonwealth filed its complaint against NCFS-Utah in order to enforce the VCPA on behalf of the public. Although the Commonwealth sought restitution for individual consumers, restitution in this context is similar to the "victim-specific" relief pursued by the EEOC in *Waffle House*. *See Waffle House*, 534 U.S. at 296. The Commonwealth pursued restitution, along with other forms of relief, to vindicate the public interest and enforce the laws of the Commonwealth that are intended to protect consumers. *See generally* Code § 59.1-197 (explaining that the VCPA is intended to "promote fair and ethical standards of dealings between suppliers and the consuming public").

Under *Waffle House* and general principles of contract law, the Commonwealth is not bound by the arbitration agreements at issue. Accordingly, the FAA does not preclude the Commonwealth from pursuing its VCPA enforcement action in a judicial forum. Moreover, the Commonwealth is not precluded from seeking "victim-specific" relief, including restitution for individual consumers, when enforcing the VCPA on behalf of the public. *See Waffle House*, 534 U.S. at 296.

## B.

NCFS-Utah also contends that the VCPA did not authorize the Commonwealth to collect restitution for individual consumers. This argument conflicts with the plain language of the pertinent provisions of the VCPA and the remedial purpose of the legislation.

8

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 208 (2015) (quoting *VEPCO v. Board of Cty. Supervisors*, 226 Va. 382, 387-88 (1983)). "[S]tatutes are not to be considered as isolated fragments of law, but as a whole, or as parts of . . . a single and complete statutory arrangement." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 384 (2016) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)).

The General Assembly has indicated that the VCPA is to "be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." *See* Code § 59.1-197. "The legislature seldom chooses to expressly direct the courts how to apply a statute. When it does so we must pay special attention to that choice and ensure that it is given full effect." *Ballagh v. Fauber Enters., Inc.*, 290 Va. 120, 125 (2015). "We construe remedial legislation liberally in favor of the injured party." *Id.*

Pursuant to Code § 59.1-203, "the Attorney General . . . may cause an action to be brought in the appropriate circuit court in the name of the Commonwealth . . . to enjoin any violation of [the VCPA]." Code § 59.1-203(A). Thereafter, the "circuit court having jurisdiction may enjoin such violations notwithstanding the existence of an adequate remedy at law." *Id.* The circuit court is "authorized to issue temporary or permanent injunctions to restrain and prevent violations of [the VCPA]." Code § 59.1-203(C).

Code § 59.1-205 allows a circuit court to award restitution when it permanently enjoins a practice that violates the VCPA. Pursuant to Code § 59.1-205,

> [t]he circuit court may make such additional orders or decrees as
> may be necessary to restore to any identifiable person any money

> or property, real, personal, or mixed, tangible or intangible, which
> may have been acquired from such person by means of any act or
> practice declared to be unlawful in [Code] § 59.1-200 . . . ,
> provided, that such person shall be identified by order of the court
> within 180 days from the date of the order permanently enjoining
> the unlawful act or practice.

We conclude that Code § 59.1-205 refers to the remedy of restitution, even though it fails to expressly use that particular term.[5] Code § 59.1-205 permits money or property to be "restored" to the victim of a VCPA violation. "'Restitution' is defined, in pertinent part, as 'a *restoration* of something to its rightful owner: the making good of or giving an equivalent for some injury (as a loss of or damage to property).'" *Howell v. Commonwealth*, 274 Va. 737, 740 (2007) (emphasis added) (quoting Webster's Third New International Dictionary 1936 (1993)).

The plain language of Code § 59.1-203 allows the Attorney General to file an action on behalf of the Commonwealth to enjoin practices that violate the VCPA. In turn, Code § 59.1-205 permits a circuit court to award restitution after it enters an order permanently enjoining an unlawful practice. When Code §§ 59.1-203 and 59.1-205 are read together, the statutes implicitly authorize the Attorney General to request an award of restitution when pursuing a VCPA enforcement action on behalf of the Commonwealth. This construction is consistent with the plain language of the statutory provisions at issue and the remedial purpose of the VCPA. *See* Code § 59.1-197; *Ballagh*, 290 Va. at 125.

---

[5] Numerous jurisdictions have interpreted identical or similar statutory language to encompass the remedy of restitution. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1174 (9th Cir. 2014); *People v. Pacific Land Research Co.*, 569 P.2d 125, 127 n.4 (Cal. 1977); *Commonwealth v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 706 (Ky. Ct. App. 1981); *State v. Master Distribs., Inc.*, 615 P.2d 116, 123 (Idaho 1980); *Kugler v. Romain*, 279 A.2d 640, 642 (N.J. 1971); *Thomas v. State*, 226 S.W.3d 697, 706 (Tex. App. 2007); *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 510 P.2d 233, 241 (Wash. 1973) (en banc).

## III.  CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court.

*Affirmed.*