# United States Court of Appeals for the Federal Circuit

---

**In re: MAXPOWER SEMICONDUCTOR, INC.,**
*Petitioner*

---

2021-146

---

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2020-01674, IPR2020-01675, IPR2020-01676, and IPR2020-01677.

---

ROGER L. COOK, Roger Cook Law, San Francisco, CA, for petitioner MaxPower Semiconductor, Inc. Also represented by NANCY TOMPKINS.

LISA KOBIALKA, Kramer Levin Naftalis & Frankel LLP, Menlo Park, CA, for respondent ROHM Semiconductor USA, LLC. Also represented by JAMES R. HANNAH; AARON M. FRANKEL, SHANNON H. HEDVAT, CRISTINA MARTINEZ, New York, NY.

----------------------------------------------------

**MAXPOWER SEMICONDUCTOR, INC.,**
*Appellant*

**v.**

**ROHM SEMICONDUCTOR USA, LLC,**
*Appellee*

---

2021-1950, 2021-1951, 2021-1952, 2021-1953

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01674, IPR2020-01675, IPR2020-01676, and IPR2020-01677.

———————————

ROGER L. COOK, Roger Cook Law, San Francisco, CA, for appellant.  Also represented by NANCY TOMPKINS.

JAMES R. HANNAH, Kramer Levin Naftalis & Frankel LLP, Menlo Park, CA, for appellee.  Also represented by LISA KOBIALKA; AARON M. FRANKEL, SHANNON H. HEDVAT, CRISTINA MARTINEZ, New York, NY.

———————————

**ON PETITION**

———————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

Order for the court filed by *Circuit Judge* REYNA.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* O'MALLEY.

REYNA, *Circuit Judge.*

## O R D E R

MaxPower Semiconductor, Inc. ("MaxPower") directly appeals the Patent Trial and Appeal Board's ("Board") determinations to institute *inter partes* review proceedings, which involve four MaxPower patents.  MaxPower alternatively seeks a writ of mandamus to review those decisions.

A decision to institute *inter partes* review proceedings, like a decision not to institute, is "nonappealable" under 35 U.S.C. § 314(d). *See Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021); *In re Procter & Gamble Co.*, 749 F.3d 1376, 1378–79 (Fed. Cir. 2014); *see also Loughlin v. Ling*, 684 F.3d 1289, 1292 (Fed. Cir. 2012) (holding that 28 U.S.C. § 1295(a)(4)(A) incorporates a finality requirement). Section 314(d)'s rule of nonappealability confirms the unavailability of jurisdiction under § 1295(a)(4)(A) to hear MaxPower's direct appeals. Section 314(d) also presents an obstacle for MaxPower in showing a clear and indisputable right to this court's immediate review of the Board's decisions necessary to grant its alternative requests for mandamus relief. *Procter & Gamble*, 749 F.3d at 1379.

MaxPower suggests that the collateral order doctrine warrants immediate review because its challenge implicates questions of whether the Board can institute proceedings that are subject to arbitration. But that doctrine only allows appeal when an order "affect[s] rights that will be irretrievably lost in the absence of an immediate appeal." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013) (citation and internal quotation marks omitted). If MaxPower is truly not raising matters that are absolutely barred from appellate review under section 314(d) (an issue we need not decide here), then MaxPower can meaningfully raise its arbitration-related challenges after the Board's final written decisions. We therefore cannot say that MaxPower has established jurisdiction to review these decisions under the collateral order doctrine. *See generally Queipo v. Prudential Bache Sec., Inc.*, 867 F.2d 721, 722 (1st Cir. 1989) (holding an order denying a stay in favor of arbitration is not effectively unreviewable after final judgment under the collateral order doctrine).

We likewise reject MaxPower's argument that its appeals are authorized under 9 U.S.C. § 16(a)(1). That

provision states that an appeal may be taken from an order "refusing a stay of any action under section 3 of this title," "denying a petition under section 4 of this title to order arbitration to proceed," "denying an application under section 206 of this title to compel arbitration," "confirming or denying confirmation of an award or partial award," or "modifying, correcting, or vacating an award." The Board's decisions do not fall within any of those categories.

Finally, MaxPower has not shown that this mandamus petition is not merely a "means of avoiding the statutory prohibition on appellate review of agency institution decisions." *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2018). MaxPower readily admits, "This mandamus petition challenges decisions instituting inter partes review." Pet. v; *see also, e.g.*, Pet. 1 ("[MaxPower] seeks a writ of mandamus directing the [Board] to vacate orders instituting *inter partes* review."). And MaxPower has not shown that the facts of this case support an exception to the nonappealability of institution decisions and unavailability of mandamus relief. *See Mylan Lab'ys.*, 989 F.3d at 1381, 1382 n.5 (suggesting availability of mandamus when the Board clearly and indisputably exceeds its authority to grant a petition to institute IPR); *Power Integrations*, 899 F.3d at 1321 (citing *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141–42 (2016)).

For example, the arguments raised by MaxPower do not show, under the demanding standards for mandamus, that the Board has clearly and indisputably exceeded its authority. The Board is not bound by the private contract between MaxPower and ROHM. And MaxPower fails to explain why 35 U.S.C. § 294 clearly deprives the Board of authority to institute *inter partes* review when the statute does not by its terms task the agency with enforcing private arbitration agreements. The partial dissent offers, *sua sponte*, a theory for why mandamus might be warranted, but the two cases on which the dissent primarily relies, *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), and

*Preston v. Ferrer*, 552 U.S. 346 (2008), are not cited anywhere in MaxPower's petition, and we disagree that either case applies regardless. *Preston* neither holds nor suggests that an agency tribunal itself is required to enforce or comply with an arbitration agreement, as opposed to a court exercising its power over the parties to compel them into arbitration as was the procedural posture in *Preston*. It is *the party* that "cannot escape resolution" in an arbitral forum. *Id.* at 359. We do not see, then, how the Board's action is one that clearly exceeded the scope of its authority.[1]

Accordingly,

IT IS ORDERED THAT:

(1)  Appeal Nos. 2021-1950, -1951, -1952, -1953 are dismissed.

(2)  MaxPower's mandamus petition (ECF No. 2 in No. 2021-146) is denied.

(3)  Each side shall bear its own costs.

FOR THE COURT

September 8, 2021                    /s/ Peter R. Marksteiner
        Date                        Peter R. Marksteiner
                                    Clerk of Court

---

[1]  Moreover, although we need not go through the mandamus framework, we note that MaxPower fails to show it has no other avenue of relief, as MaxPower remains free to ask the courts to enjoin ROHM from proceeding with the *inter partes* reviews. *See, e.g.*, *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019) (affirming a preliminary injunction ordering petitioner to withdraw its *inter partes* petitions due to a forum selection clause in the parties' contract).

# United States Court of Appeals
# for the Federal Circuit

--------------------

**In re: MAXPOWER SEMICONDUCTOR, INC.,**
*Petitioner*

--------------------

2021-146

--------------------

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2020-01674, IPR2020-01675, IPR2020-01676, and IPR2020-01677.

-------------------------------------------------

**MAXPOWER SEMICONDUCTOR, INC.,**
*Appellant*

**v.**

**ROHM SEMICONDUCTOR USA, LLC,**
*Appellee*

--------------------

2021-1950, 2021-1951, 2021-1952, 2021-1953

--------------------

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01674, IPR2020-01675, IPR2020-01676, and IPR2020-01677.

--------------------

**ON PETITION**

———————————

O'MALLEY, *Circuit Judge*, concurring-in-part and dissenting-in-part.

35 U.S.C. § 294 makes agreements to arbitrate patent validity "valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract." The majority's denial of a writ of mandamus in this case allows the Patent Trial and Appeal Board to add a new caveat to Congress's clear instruction that agreements to arbitrate patent validity shall be "valid, irrevocable, and enforceable"—i.e., except during *inter partes* review.

There is no support for this new exception in the text of the statute itself. Indeed, the Board and the majority ignore the statutory text of § 294 and the strong policy favoring arbitration repeatedly confirmed by the Supreme Court. In so doing, they irreversibly harm MaxPower by denying it the benefit of its arbitration agreement. And they cast a shadow over all agreements to arbitrate patent validity, which, after today, apply only in district courts and not in *inter partes* review proceedings. Because the majority's approach is inconsistent with the statutory text and Supreme Court precedent, I dissent from the denial of MaxPower's mandamus petition in Appeal No. 21-146. I concur in the dismissal of Appeal Nos. 2021-1950, -1951, -1952, and -1953.

## I.    BACKGROUND

In 2007, ROHM Japan and MaxPower entered a technology license agreement ("TLA") which, as amended in 2011, includes an agreement to arbitrate "[a]ny dispute, controversy, or claim arising out of or in relation to this Agreement or at law, or the breach, termination, or validity thereof . . . ." In 2019 and 2020, a dispute arose between ROHM Japan and MaxPower concerning whether the TLA covers ROHM's silicon carbide RFP/RSFP products. In

September 2020, MaxPower notified ROHM Japan of its intent to initiate arbitration in thirty days.  Shortly thereafter, on September 23, 2020, ROHM Semiconductor USA, LLC ("ROHM USA" or "ROHM"), a wholly owned subsidiary of ROHM Japan, filed a complaint for declaratory judgment of noninfringement of four MaxPower patents in the Northern District of California and four *inter partes* review petitions concerning those same four patents.[1]  In a one-page order, the district court found that the TLA "unmistakably delegate[s] the question of arbitrability to the arbitrator."  *Rohm Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, No. 20-cv-06686-VC, 2021 WL 822932, at *1 (N.D. Cal. Feb. 4, 2021).  The district court compelled ROHM USA to arbitrate and dismissed the case.[2]

---

[1]    Complaint for Declaratory Judgment of Non-Infringement, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, No. 20-cv-06686-VC (N.D. Cal. filed Sep. 23, 2020), ECF No. 1; Petition for *Inter Partes* Review of United States Patent No. 7,843,004, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, IPR2020-01674 (P.T.A.B. filed Sep. 23, 2020), Paper No. 1; Petition for *Inter Partes* Review of United States Patent No. 8,076,719, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, IPR2020-01675 (P.T.A.B. filed Sep. 23, 2020), Paper No. 1; Petition for *Inter Partes* Review of United States Patent No. 8,466,025, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, IPR2020-01676 (P.T.A.B. filed Sep. 23, 2020), Paper No. 1; Petition for *Inter Partes* Review of United States Patent No. 8,659,076, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, IPR2020-01677 (P.T.A.B. filed Sep. 23, 2020), Paper No. 1.

[2]    ROHM appealed that decision to this court in Case No. 21-1709, which is currently pending.

Months later, on April 15, 2021, the Board instituted ROHM's four *inter partes* review petitions. The Board held "that the arbitration clause is not a reason to decline institution." Decision Granting Institution at 10–11, *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, IPR2020-01674 (P.T.A.B. Apr. 15, 2021), Paper No. 14. [3] It held that "even if the question of whether patentability falls within the scope of the agreement to arbitrate is committed to the arbiter" there is no "statute, rule, or policy that would preclude the Office from acting on the Petition." *Id.* at 11. The Board rejected MaxPower's argument that 35 U.S.C. § 294 applies to *inter partes* review proceedings because Chapter 31 of the U.S.C., which provides for those proceedings, is "an entirely different Chapter" than the one under which § 294 falls.[4] *Id.* at 12. The Board further found that any issues related to the TLA are beyond the Board's mandate as they are issues of contractual interpretation. In a footnote, the Board compared the arbitration issue to cases in which this court found that state sovereign immunity and tribal immunity are "not implicated" in *inter partes* review proceedings.

MaxPower filed four interlocutory appeals of the Board's institution decisions. *MaxPower Semiconductor, Inc. v. ROHM Semiconductor USA, LLC*, Nos. 21-1950, 21-1951, 21-1952, 21-1953 (Fed. Cir. docketed May 14, 2021) (consolidated under No. 21-1950). I concur in the majority's dismissal of those appeals because 35 U.S.C. § 314(d) provides that "[t]he determination by the Director

---

[3] All citations are to the Board's institution decision in IPR2020-01674. The Board's discussion of the arbitration issue appears to be identical in all four institution decisions.

[4] Section 294 is in Chapter 29, which concerns civil actions rather than administrative actions.

whether to institute an inter partes review under this section shall be final and nonappealable."

MaxPower also sought a writ of mandamus. *MaxPower Semiconductor, Inc. v. ROHM Semiconductor USA, LLC*, No. 21-146 (Fed. Cir. docketed May 14, 2021). It asked this court to stay or terminate the *inter partes* review proceedings without prejudice to later institution if an arbitrator decides that *inter partes* review proceedings are appropriate. The majority denies that request without even conducting oral argument on this question of first impression. I dissent.

## II.    DISCUSSION

I believe that mandamus is warranted. At the very least, I believe that this important issue of first impression deserves oral argument with the four *inter partes* review proceedings stayed pending our decision.

In this court's recent decision in *Mylan*, we held that, "[w]hile there is no avenue for direct appeal of decisions denying institution, . . . judicial review is available in extraordinary circumstances by petition for mandamus." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1379 (Fed. Cir. 2021). While we did not grant a writ of mandamus in that case, we noted that we "need not decide whether any petition for writ of mandamus challenging the Patent Office's *grant* of institution could ever be meritorious." *Id.* at 1382 n.5 (emphasis in original). We further recognized that decisions granting institution are fundamentally different from denials because a patentee has much more to lose from a grant than a challenger may lose from a denial. *Id.* (citing *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2153 n.6 (2016) (Alito, J., concurring-in-part and dissenting-in-part)).

To show that it is entitled to a writ of mandamus, Max-Power must "(1) show that it has a clear and indisputable legal right; (2) show it does not have any other adequate

method of obtaining relief; and (3) convince the court that the writ is appropriate under the circumstances." *Id.* at 1382.  This case provides exactly the sort of extraordinary circumstances under which mandamus review is appropriate.

## A.  Clear and Indisputable Legal Right

MaxPower has a clear and indisputable legal right to enforcement of the TLA's arbitration provision.  Section 294 confirms as much when it states that arbitration provisions relating to patent validity "shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract."  35 U.S.C. § 294(a).

The Supreme Court's repeated pronouncements of the "liberal federal policy favoring arbitration agreements" under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, further confirm MaxPower's right to arbitration.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).  The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24–25.

The Board did not resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *See id.*  It did the opposite.  It found that, even if there are no doubts about the applicability of the arbitration provision, there is no "statute, rule, or policy that would preclude" it from instituting *inter partes* review.  Decision Granting Institution at 11, *Rohm*, IPR2020-01674, Paper No. 14.

Contrary to the Board's assertions, the strong "federal policy favoring arbitration agreements" embodied in the FAA and in 35 U.S.C. § 294 applies to the Board just as it applies to federal courts. Although no cases have yet addressed whether § 294 applies in *inter partes* reviews, Supreme Court cases considering the FAA indicate that § 294 should apply in those proceedings.

Cases addressing section 2 of the FAA are applicable to cases concerning 35 U.S.C. § 294. Section 294 was enacted in 1982 to "allow parties to make the enforcement provisions of the Federal Arbitration Act . . . applicable to patent contracts." *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001). As a result, "[t]he FAA is applicable to settlement and license agreements involving patents." *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1354 (Fed. Cir. 2004). Further, 9 U.S.C. § 2 and 35 U.S.C § 294(a) have nearly identical language. 9 U.S.C. § 2 states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).

Similarly, 35 U.S.C. § 294(a) states:

> A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract. In the

absence of such a provision, the parties to an existing patent validity or infringement dispute may agree in writing to settle such dispute by arbitration. Any such provision or agreement *shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract.*

35 U.S.C. § 294(a) (emphasis added).

Finally, 35 U.S.C. § 294 expressly incorporates certain provisions of the FAA in § 294(b):

Arbitration of such disputes, awards by arbitrators and confirmation of awards shall be governed by title 9, to the extent such title is not inconsistent with this section.

Two Supreme Court cases indicate that the FAA, and, therefore, 35 U.S.C. § 294, apply to prevent institution of agency proceedings initiated by a party to an arbitration agreement: *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), and *Preston v. Ferrer*, 552 U.S. 346 (2008).[5] In *Waffle House*, the Supreme Court found that an arbitration agreement between an employee and employer did not bar an enforcement action brought by the EEOC because the EEOC was not a signatory to the agreement. 534 U.S. at

---

[5] The majority notes that MaxPower did not raise *Preston* or *Waffle House* in its petition. But that MaxPower did not cite those cases does not prevent this court from considering them or any other applicable law. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). There is nothing improper with *sua sponte* seeking guidance in binding Supreme Court precedent.

297.  But, in *Waffle House*, the Supreme Court noted that it might hold differently if "the EEOC could prosecute its claim only with [the employee's] consent, or if its prayer for relief could be dictated by" the employee, who was a party to the arbitration agreement.  *Id.* at 291.

In *Preston*, the Supreme Court distinguished *Waffle House*, noting that in *Waffle House* the agency sat "not as adjudicator but as prosecutor[.]"  552 U.S. at 359.  The Supreme Court went on to "disapprove the distinction between judicial and administrative proceedings" and find that the FAA overrides state statutes that refer certain disputes to an administrative agency for initial adjudication.  *Id.* at 360.  *Preston* shows that arbitration agreements can preclude an administrative agency's exercise of its otherwise lawful jurisdiction to adjudicate disputes, such as the Board's jurisdiction over *inter partes* review proceedings.  And *Waffle House* is not to the contrary.  Unlike the EEOC in *Waffle House*, the Board sits as a neutral adjudicator rather than as a party, and ROHM, a signatory to the TLA, had complete control over the *inter partes* review petitions.[6]

In *Preston*, the Supreme Court determined that the validity of a contract between an actor, Alex Ferrer, and his former attorney, Arnold Preston, must be determined by an arbitrator pursuant to the contract's arbitration agreement, despite a California law that vested original jurisdiction over the dispute with the California Labor Commissioner.  *Preston*, 552 U.S. at 350.  Preston had sought arbitration to recover fees allegedly due under a

---

[6]    Indeed, we have held that the Board may only decide invalidity grounds raised by a petitioner in its petition and "the Board must base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond."  *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016).

contract with Ferrer. *Id.* Ferrer responded by filing a petition to the California Labor Commissioner charging that the contract was invalid and unenforceable under the California Talent Agencies Act because Preston had acted as a talent agent without the requisite license. *Id.* The Talent Agencies Act grants the Labor Commissioner exclusive jurisdiction to decide issues such as that raised by Ferrer. *Id.* at 355–56. Ferrer argued that the Labor Commissioner's original jurisdiction under the Talent Agencies Act is not incompatible with the FAA because it merely postpones arbitration until after the Labor Commissioner issues her final decision. *Id.* at 356. The Supreme Court rejected that argument, holding that any arbitration that might potentially follow the Labor Commissioner's decision "would likely be long delayed, in contravention of Congress' intent" to provide speedy access to and resolution of arbitration. *Id.* at 357–58. Ferrer also asked the Supreme Court to overlook the conflict between the arbitration clause and the Talent Agencies Act "because proceedings before the Labor Commissioner are administrative rather than judicial." *Id.* at 358. The Supreme Court rejected this argument. It distinguished *Waffle House* because, unlike the EEOC, the Labor Commissioner "serves as an impartial arbiter" rather than as an advocate. *Id.* at 359. The Supreme Court concluded that the issue was only one of which forum hears the parties' dispute, not of substantive rights available to the parties. *Id.* It held that, "under the contract he signed, [Ferrer] cannot escape resolution of those rights in an arbitral forum." *Id.*

*Preston* shows that § 294 prevents the Board's consideration of patent validity in *inter partes* review proceedings, at least until after an arbitrator has determined that the issue is not one for arbitration. Applying the Supreme Court's analysis in *Preston*, § 294 is incompatible with the Board's exercise of original jurisdiction over IPR proceedings. Permitting the Board to ignore § 294 would delay or prevent arbitration, in contravention of Congress's

intention to provide for speedy institution and resolution of arbitration. *Preston* is analogous to the situation before us here, as the Board, like the Labor Commissioner in *Preston*, acts as a neutral arbiter, not an advocate, and ROHM, a party to the TLA, initiated and maintains some control over the *inter partes* review proceedings.

*Waffle House* does not foreclose application of § 294 or the FAA to prevent institution of *inter partes* review. ROHM, unlike the employee in *Waffle House*, is the master of its own petition (which is analogous to a complaint), and the Board cannot institute *inter partes* review without ROHM's first petitioning for it. And, while ROHM and MaxPower cannot compel the Board to terminate the proceedings, if they request termination before the Board "has decided the merits of the proceeding," the Board may choose to terminate the proceeding. *See* 35 U.S.C. § 317(a). Thus, ROHM and MaxPower, both parties to the TLA, have ongoing influence over the proceedings.

The Board's reasoning that 35 U.S.C. § 294 does not apply in the *inter partes* review context because the statutes governing *inter partes* review proceedings are in a different chapter than § 294 is unavailing. If Congress intended to limit § 294 to Chapter 29, it could have easily done so by limiting its application to "this chapter" as it has done in many other statutes. Supreme Court cases, such as *Preston*, show that the FAA applies to proceedings governed by statutes outside of Chapter 1 of Title 9, even those governed by statutes which do not appear in the United States Code at all. There is no reason to distinguish § 294 or limit its application only to Chapter 29.

The Board's comparison of § 294 to sovereign immunity is similarly unavailing. In *Regents of the University of Minnesota v. LSI Corp.*, 926 F.3d 1327 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 908 (2020), this court held that "sovereign immunity does not apply to . . . agency proceedings commenced by the United States," such as *inter partes*

review proceedings. 926 F.3d at 1337–38. We have not addressed the impact of private arbitration agreements and how those agreements affect the Board's institution of *inter partes* review.

The Board also asserted that interpretation of the TLA is beyond its mandate. Neither the Board nor ROHM has cited any statute or cases from this court or the Supreme Court to support this assertion. The Board pointed to two previous Board decisions in which it declined to interpret forum selection clauses, but those cases are not binding here. Moreover, the Board need not have undertaken much, or indeed, any, contractual interpretation here. The Board could have relied on the district court's finding that arbitrability is an issue for the arbitrator, and refused to institute until the parties have completed arbitration. To the extent there is any uncertainty in the TLA, the Board should have heeded the Supreme Court's pronouncement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and refused to institute until after the parties have undertaken arbitration to resolve the issue. *See Moses H. Cone*, 460 U.S. at 24–25.

The majority asserts that neither § 294 nor the Supreme Court's precedent in *Preston* requires the Board to enforce the parties' arbitration agreement. But the Board need not enforce the arbitration agreement. It need merely defer to the arbitration agreement by staying or terminating its own proceedings until the arbitration issue is resolved. The majority states that it is the parties, not the Board, that "cannot escape resolution" in an arbitral forum. But the majority and the Board permit ROHM to do exactly that—escape resolution in an arbitral forum.

The majority also relies on the fact that § 294 does not, on its face, task the Board with enforcing private

arbitration agreements in *inter partes* review proceedings.[7] But § 294 need not list every possible situation in which it applies. Section 294 does not mention its applicability to administrative proceedings, but nor does it cabin its applicability only to judicial proceedings. Rather, it is a statute of general applicability—it says only that arbitration provisions "shall be valid, irrevocable, and enforceable[.]" And the statutes governing *inter partes* review proceedings, which were enacted years after § 294, never state that § 294 does not apply in those proceedings. As the Supreme Court has noted, there is a "'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (quoting *United States v. Fausto*, 484 U.S. 439, 452, 453 (1988)). If Congress wanted to open a loophole in § 294 by permitting the Board to ignore that section in *inter partes* review proceedings, surely it would have said so.

## B. No Other Avenue for Adequate Relief

MaxPower has no other adequate method of obtaining relief. We have determined that § 314(d) precludes interlocutory appeal of the Board's grants of institution here. A writ of mandamus directing the Board to terminate or stay the *inter partes* reviews is the only way to prevent the reviews from proceeding. *See In re Princo Corp.*, 478 F.3d 1345, 1357 (Fed. Cir. 2007) (finding that a party whose right "cannot be vindicated by direct appeal" "lacks adequate alternative means to obtain the relief sought" (internal quotation marks and citation omitted)). By forcing

---

[7]    If, as the majority implies, § 294 applies only in judicial and not in administrative forums, that may lead to the odd result of this court being prevented from hearing appeals from *inter partes* review final decisions, as § 294 would require enforcement of the arbitration provision.

MaxPower to defend the validity of its patents through multiple concurrent *inter partes* review proceedings, the majority denies MaxPower the benefit of any agreement to arbitrate validity.  If the Board finds that any of Max-Power's claims are invalid, the harm to MaxPower is compounded.    Under  § 294,  an  arbitrator's  invalidity determinations are binding only on the parties to the arbitration and has no effect on anyone else.  35 U.S.C. § 294(c).  An arbitrator cannot cancel a patent claim.  If the Board finds a claim invalid during *inter partes* review, it cancels the claim.

In enacting § 294, Congress intended to assure contracting parties "that they could avail themselves of the numerous advantages of arbitration without the possibility of having to reargue the dispute in court."  H.R. Rep. No. 97-542, at 13 (1982).  In a House Committee on the Judiciary Report recommending passage of the appropriations act which contained the first version of § 294, the Committee explained:

> The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of times and places of hearings and discovery devices; and, arbitrators are frequently better versed than judges and juries in the area of trade customs and the technologies involved in these disputes.

*Id.*

By denying mandamus to correct the Board's incorrect holding that arbitration provisions cannot prevent institution of *inter partes* review, this court deprives MaxPower of all of those advantages, except, perhaps, the last.  While Administrative Patent Judges are admittedly well-versed

in the technologies involved in patent validity disputes, there is no reason to believe that the arbitrator would be any less so. And, *inter partes* review does not provide the other advantages of arbitration. The harm of failing to defer to a valid arbitration provision is particularly acute where there are multiple concurrent *inter partes* reviews, which could be, and should be, addressed in a single arbitration proceeding.

It is not enough to say, as ROHM does, that MaxPower may be able to raise its arguments under § 294 after the completion of the *inter partes* reviews. At that point, the harm will have been done. And § 314(d) prevents review of the Director's institution decisions on appeal of a final decision just as it prevents interlocutory appeals. MaxPower would have to seek a writ of mandamus after the Board's final decision. Any writ this court issued after a final decision would be too little, too late.

ROHM insinuates that MaxPower should have sought relief from the district court by requesting an injunction preventing the *inter partes* reviews from proceeding. ROHM does not explain what power a district court overseeing an infringement case would have to compel the Board to halt its proceedings over MaxPower's patents' validity. If MaxPower were to file a separate breach of contract action and receive an injunction compelling ROHM to drop out of the *inter partes* review proceedings, those proceedings may not necessarily end as "the Patent Office may continue to conduct an inter partes review even after the adverse party has settled." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016). Moreover, forcing MaxPower to concurrently litigate in multiple forums is not an adequate alternative avenue for relief. If MaxPower's only avenue for relief is to file a breach of contract claim while simultaneously defending the validity of its patents in four *inter partes* reviews and litigating ROHM's appeal of the district court's decision to compel arbitration, it is further denied the benefits of its agreement to arbitrate. The

arbitration agreement, rather than streamlining disputes between the parties, will have become a tool to multiply those disputes.

## C. Mandamus Is Appropriate

MaxPower has shown that a writ of mandamus is appropriate under the circumstances. Permitting ROHM to avoid arbitration nearly vitiates any agreement to arbitrate disputes over patent validity. If § 294 does not apply to *inter partes* review proceedings, parties to arbitration agreements have a route to avoid their responsibilities under those agreements despite the strong federal policy of enforcing arbitration agreements. The Board's decision and the majority's refusal to rectify that decision lead to the strange result of a patent challenger being able to bring an *inter partes* review raising the same validity challenges that a district court would dismiss pursuant to an arbitration clause.[8]

The majority's decision not to grant the writ here, or even to stay the *inter partes* review proceedings so that this court can at least hear oral argument, is inconsistent with the text of § 294 and the Supreme Court's repeated statements in favor of strong enforcement of arbitration agreements. *See AT&T Mobility*, 563 U.S. at 346; *Buckeye Check Cashing*, 546 U.S. at 443; *Gilmer*, 500 U.S. at 25; *AT&T Techs.*, 475 U.S. at 650; *Moses H. Cone*, 460 U.S. at 24; *United Steelworkers*, 363 U.S. at 582–83. MaxPower and ROHM agreed to take their disputes under the TLA to arbitration. Both Congress and the Supreme Court have clearly voiced their support for the enforceability of such agreements. And, yet, MaxPower finds itself forced to

---

[8] Indeed, one district court has already dismissed related claims concerning infringement of the four patents at issue in these *inter partes* reviews. *Rohm*, 2021 WL 822932, at *1.

argue, many times over, in at least three tribunals, for the enforcement of its arbitration agreement and the validity of its patents—issues which are properly within the jurisdiction of an arbitrator.

## III.    CONCLUSION

For the foregoing reasons, I dissent from the majority's denial of mandamus directing the Board to stay or terminate the four *inter partes* review proceedings pending arbitration. I concur in the majority's dismissal of Appeal Nos. 2021-1950, -1951, -1952, and -1953.